WM. N. DICKEY, Respondent, v. ISAAC ADLER et al., Appellants.

**Kansas City Court of Appeals, April 4, 1910.**

1. **CONVERSION: Bills and Notes: Certificate of Deposit.** Plaintiff owning a four hundred dollar certificate of deposit, indorsed it and deposited it with defendants' clerk as collateral security for a loan of ten dollars. The clerk thereafter delivered the certificate to his employers who deposited it in their bank and took credit therefor, and thereafter gave the clerk a check for the proceeds. There was sufficient evidence to authorize the jury's findings that the defendants knew that the certificate was held as collateral security, and that their action in cashing the same was a conversion.

2. ————: ————. While a certificate of deposit is a negotiable instrument one who takes it with notice of the holder's infirmity of title cannot claim to be an innocent purchaser.

3. ————: ————: **Partners.** A partner who knows nothing of the facts constituting a conversion, but who gets the benefit thereof is jointly liable with his copartners.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

AFFIRMED.

*I. J. Ringolsky* for appellant.

(1) The certificate of deposit introduced in evidence is a negotiable instrument and the rights and liabilities of the parties to this suit should be determined by the statutes of Missouri and the law of merchants. Laws of 1905, p. 243, sec. 1; 7 Cyclopedia of Law, p. 535, 811, note 55 and p. 853; Adell & Frink v. Gray & Co., 15 Mo. 357. (2) Even if the certificate of deposit is not a negotiable instrument as such, yet as it is transferable by indorsement and is commercial paper and was indorsed by plaintiff, the rights and liabilities of the parties are to be determined as if it is a nego-

tiable instrument and not as if it is an ordinary corporeal chattel. Bank v. Bank, 71 Mo. 183. (3) Before a purchaser for value of a negotiable instrument before maturity can be charged with notice of an infirmity in the holder's title to same, under the statutes of Missouri and the law as firmly established by the appellate courts of this State, it is incumbent on the plaintiff to show that defendants, Wilkinson and Barto, had actual knowledge of the infirmity or defect in Adler's title to the certificate of deposit or that they acted in bad faith. Laws 1905, p. 250, sec. 56; Bank v. Hammond, 104 Mo. App. 403; Jennings v. Todd, 118 Mo. 296; Hamilton v. Marks, 63 Mo. 167. (4) Gross negligence, mere suspicion, or knowledge of facts which would excite the suspicion of a prudent man, on the part of Wilkinson and Barto, would not make them liable to plaintiff; actual notice of the facts which impeach the title of Adler to the certificate of deposit must be shown before plaintiff was entitled to recover a verdict against either of the defendants, Wilkinson or Barto. Hamilton v. Marks, 63 Mo. 167; Jennings v. Todd, 118 Mo. 296; Laws of 1905, p. 250, sec. 56; Bank v. Hammond, 104 Mo. App. 403; Johnson v. McMurray, 72 Mo. 278. (5) It is true that, as a general rule at common law, no one can give a better title to personal property than he himself has, but securities and commercial paper, which, when endorsed, pass from hand to hand, are exempt from this principle of law. Savings Inst. v. Hinsman, 1 Mo. App. 336; Courtail v. Loewenstein, 78 Mo. App. 485; Hamilton v. Marks, 63 Mo. 167. (6) The instructions given for plaintiff and the instructions given by the court of its own motion, declared the rights of the parties, as if the certificate of deposit was an ordinary corporeal chattel, like household furniture, and ignored entirely the principles of law applicable to commercial paper. The rule of *caveat emptor* does not apply to commercial paper. Spooner v. Holmes, 102 Mass. 503; see authorities cited under

point 4. Although the proof shows Wilkinson's cashing the certificate was not in the line of the partnership business, yet the court made Barto liable for the wrongdoings of Wilkinson, if he committed a tort and a conversion, just because he was a partner in business with Wilkinson. Barto was not liable for the tort of Wilkinson, even if it be conceded Wilkinson did commit a tort and was guilty of conversion. Shepard v. Hynes, 104 Fed. 449.

*George W. Day* and *H. L. Green* for respondent.

BROADDUS, P. J.—This is a suit for conversion. The facts are as follows: On the 22d day of April, 1908, plaintiff was at the Union Depot in Kansas City, Missouri, on his way to visit his son at Fayette, Missouri, but without transportation. He had, however, the following certificate of deposit from a bank in Kansas payable to his order:

"ST. JOHN, KANS., Apr. 9, 1908.
No. 9414.
"This certifies, that W. N. Dickey has deposited $400.00 in the First National Bank, Four Hundred & no-100 Dollars payable to the order of self on the return of this certificate properly indorsed.
"R. N. THOMPSON, Cashier.
"Certificate of Deposit. Not subject to check."

The plaintiff went into the place of business of defendants Wilkinson and Barto nearby and asked defendant Adler, their clerk, to loan him ten dollars, and offered to put up the said certificate of deposit as security for the loan.

Plaintiff's evidence tends to show that he told Adler that he was going on a visit to his son at Fayette, Missouri; that he was without money, and that he would put up the certificate of deposit if he would loan him ten dollars, which he would on his

return in a few days redeem, or that he might write for it. Adler told him he would make him the loan as an accommodation and that he would hold the certificate until plaintiff returned or redeemed it. At Adler's request plaintiff wrote his name on the back of the certificate. At this time defendant Wilkinson who was present said: "That check ain't worth a damn to me unless it's signed." Plaintiff left the place, but shortly returned and said to Adler, "You neither give me your name nor number nor nothing else." Whereupon Adler wrote on a slip of paper the following: "I. Aldin, 1042 Grand Avenue."

Adler's statement is somewhat different, *viz.*, that "He (plaintiff) told me that—he says, 'Now, I will expect to be here in two or three days and redeem that,' and, he says, 'If I do not appear personally I might give an order to some one, or write personally.' "

In about three days thereafter Adler went to Wilkinson and made some explanation of the matter. The words: . "Pay to Isack Adler or order" were written above the name of plaintiff on the back of the certificate. Wilkinson then indorsed the name of Wilkinson & Co. below, and the certificate was taken to the bank by Adler and deposited to the credit of Wilkinson & Co., and entry made to that effect in their bank book by the cashier of the bank for the sum of four hundred dollars. Wilkinson & Co. paid nothing to Adler at that time, but five days thereafter they drew a check on the bank in his favor for four hundred dollars upon which he drew the money.

On the 30th day of April, the day on which the check was given to Adler for four hundred dollars, plaintiff returned and offered to redeem his certificate. He said to Wilkinson, "I borrowed the money to pay for that paper." Wilkinson said to him, "We have sent it off, but I will pay it to-morrow morning at nine o'clock." Adler was then present. Plaintiff went back next morning when Wilkinson spoke up and said, "We

have sent it off, I tell you." Plaintiff then said: "It is a hell of a note you sent it off." Whereupon Wilkinson said to a policeman who had been called in, "Take that man out of here and put him in the lock up, he is bothering me."

The defendant's evidence went to show that on the day they gave Adler the check for four hundred dollars, Wilkinson told Adler to purchase a draft in the sum of three hundred and ninety dollars, and send it to plaintiff at St. John, Kansas; but that instead of doing so Adler drew the money on the check, took out the ten dollars he had loaned plaintiff and enclosed three hundred and ninety dollars in money in an envelope addressed to plaintiff at St. John, Missouri, and forwarded it by registered mail to that place. The envelope was returned, it not having been delivered, it being addressed to the wrong place. On being opened it bore evidence according to defendant's witnesses of having been tampered with and contained no money. Other evidence of defendants on the disputed facts, conflicts with that of plaintiff.

The jury returned a verdict for the plaintiff in the sum of three hundred and ninety dollars, upon which judgment was rendered and defendants appealed.

The court at the instance of the plaintiff gave the following instruction:

"You are instructed that, if you believe from the evidence in this case, that, on or about the 22d day of April, 1908, the plaintiff was the owner and in possession of a certificate of deposit issued by the First National Bank of St. John, Kansas, dated April 9, 1908, in the sum and of the value of $400, made payable to the order of plaintiff, upon return of said certificate properly indorsed by plaintiff; that on or about said 22d day of April, 1908, plaintiff borrowed from defendant, Adler, the sum of $10, which sum plaintiff agreed to pay to said Adler on or before plaintiff's return from Fayette, Missouri, within eight or ten

days thereafter; that, to secure to said Adler the payment of said sum of $10, the plaintiff on or about said 22d day of April, indorsed his name upon the back of said certificate of deposit and delivered the same to said Adler, upon the promise of said Adler that, he, Adler, would return said certificate to plaintiff upon repayment of said sum of $10; that, on the 25th day of April, 1908, said Adler, without having received from plaintiff any instructions or authority to collect the money on said certificate of deposit, or to forward to plaintiff the amount of said certificate, less the amount he owed said Adler, indorsed his name upon the back of said certificate, and the defendant, Wilkinson, with knowledge that Adler had promised to hold said certificate as security for the repayment to Adler of $10 (if you believe from the evidence such a promise was made), then indorsed upon the back of said certificate, the name 'Wilkinson & Co.,' and the same was afterwards on said 25th day of April, deposited in The National Bank of Commerce, of Kansas City, Mo., and a credit of $400 given by said bank to the account of Wilkinson & Co., and, if you further believe from the evidence that the defendants, Wilkinson and Barto, at that time, were partners and kept their account, as such, with said National Bank of Commerce in the name of 'Wilkinson & Co.,' and that said certificate was, on said 25th day of April, 1908, of the value of $400, and said certificate was, by said National Bank of Commerce, forwarded to and paid by, said First National Bank of St. John, Kansas; then, and in such case, the defendants, and all of them, were guilty of a conversion of said certificate of deposit, and your verdict should be in favor of the plaintiff, against all of the defendants; and this is so, notwithstanding you may further believe for the evidence that 'Wilkinson & Co.' afterwards gave defendant, Adler, their check for $400, upon which said Adler received the sum of $400."

For defendants the court gave two instructions which taken together are a counterpart of that given for plaintiff.

There is a controversy between plaintiff and defendants as to whether the certificate was a negotiable instrument, the plaintiff contending that it was not, and defendants contending that it was. We agree with defendants that it was such as defined by the Act of 1905, page 243.

The defendants invoke the rule of law that it was incumbent on plaintiff to show that Wilkinson & Co., had actual notice of the infirmity of Adler's title in that they acted in bad faith. Such is law. [Bank v. Hammond, 104 Mo. App. 403; Jennings v. Todd, 118 Mo. 296; Hamilton v. Marks, 63 Mo. 167.] The defendants seek the protection of this rule from their standpoint of the evidence, that Wilkinson & Co. purchased the certificate in good faith for a valuable consideration before maturity and without any notice whatever of the infirmity of Adler's title thereto. If there had been no conflict in the evidence the judgment was erroneous. But there was such a conflict and the jury evidently disregarded defendants' testimony and gave credit to that of plaintiff. And if it was true that defendant Wilkinson was present and made the statement at the time the certificate was endorsed by plaintiff that it would be valueless to him unless it was endorsed, and that he told plaintiff, when he returned for the certificate, that the money was in the bank and for him to come back in the morning, we think the jury was fully justified in rendering the verdict for plaintiff.

Taking into consideration all the facts and circumstances, they go to show that defendants Wilkinson and Adler conspired to convert the certificate to their own use. And it is not credible that Adler sent the money in a letter as he said he did. It is true that such a thing may and sometimes does occur. But people these days do not entrust so large an amount to the

mails, especially those who are engaged in mercantile pursuits. And no good reason has been assigned why Adler did so. On the contrary when he drew out the four hundred dollars from the bank and took out the ten dollars, it would have been much more convenient to have obtained a draft then and there and sent it to plaintiff than to have afterwards put himself to the trouble to go to the postoffice and register a letter.

We believe the evidence tends to show a conversion as alleged. And it was no error to include Barto in the judgment because it was not shown that he personally participated in the transaction. As a partner of Wilkinson he was a recipient of the result of the latter's fraud and as such is estopped from denying his liability. The case was tried upon the true theory and as there is substantial evidence to sustain the judgment it is affirmed. All concur.