<hr />

PATRICK F. GORMLEY *vs.* JULIUS DANGEL.

Suffolk.    November 20, 1912. — February 25, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Contract,* Implied in law. *Fraud. Agency. Broker.*

An action for money had and received may be maintained against a defendant who fraudulently procured from a third person money that rightfully belonged to the plaintiff.

In an action for money had and received, it could have been found that the plaintiff, who was a real estate agent, obtained from the owner of certain real estate authority to procure offers for it and entered into negotiations with the defendant for a sale of the property, whereby the defendant learned the terms on which the owner of the real estate would sell it, that the negotiations came to an end, and that thereafter the defendant, intending all the time to buy the property, fraudulently procured its purchase by a third person on the terms learned by him from the plaintiff together with a payment by the owner to the defendant of a commission as broker, that the defendant paid the owner of the real estate the amount of the purchase price less the amount of the commission, and that immediately thereafter the third person, who secretly had been acting for the defendant, conveyed the real estate to him. *Held,* that the plaintiff could recover from the defendant the amount of the commission which had been earned by the plaintiff and which the defendant fraudulently had procured for himself.

RUGG, C. J. This is an action for money had and received. The testimony was not much in conflict. The plaintiff is a real estate agent, who received authority from the owner to procure offers for a house and lot. He had a series of negotiations with the defendant, whereby the latter learned that the lowest price and terms which the owner would take for the property was $6,000 in cash. Thereupon in November, 1908, he ceased relations with the plaintiff. On January 8, 1909, a deed of the property was made by the owner to one Ross, the brother-in-law of the defendant, and a deed from Ross to the defendant, both instruments having been executed, delivered and offered for record at the same time as successive instruments. The plaintiff testified that having ascertained that the defendant had become the owner of the property he went to see the agent of the former owner, and "learned that Dangel had posed as the broker in the case and had collected the commission for selling the property to Ross." An agreement between the owner and Ross, dated December 24, 1908, was in evidence, whereby the owner agreed to sell and Ross to purchase the land in question to be conveyed on or before January 14, 1909, by sufficient warranty deed conveying clear title, Ross to pay the sum of $6,000 with adjustment for taxes, of which $200 was paid down and $5,800 to be paid upon delivery of the deed. The agreement contained the further stipulation: "That a broker's commission of two and one-half (2½) per cent is to be paid by the party of the first part to Julius Dangel." There was also in evidence the check of the defendant to the order of the owner for the amount of the purchase price less the commission of two and one half per cent and the $200 previously paid in cash. Ross, called as a witness by the plaintiff, testified in substance that he was in the tailoring business at 9 Merchants' Row; that he paid $200 down, and the defendant acted for him as agent; that he did not have $6,000 in real or personal property; and that the value of his stock of goods was $1,500 or $2,000; that he never told the owner or his agent that he was acting as the agent of the defendant; that the defendant called the property to his attention and procured an attorney to look at the title; that he thought it would be a good location to open a store on the property in question, but it was reported to him that there were restrictions, so that he could not build a store, and that the defendant suggested that rather than

lose the deposit he would take the property off his hands; that the defendant was going to procure for him the whole of the purchase price on a mortgage before the deeds were passed. The defendant did not testify. It is not necessary to recite the evidence in further detail. It is plain that the jury might wholly have disbelieved that there was any arrangement in good faith on the part of Ross to purchase the property. All the circumstances might have been found to point strongly toward a fraudulent arrangement on the part of the defendant, whereby he, having learned from the plaintiff and through the efforts of the plaintiff the terms and price for which the property could be bought, falsely represented himself as an agent to the owner of the land, that the written agreement for sale executed between the owner and Ross was a mere pretence, so far as Ross was concerned, that the defendant was all the while the moving spirit in procuring the title to himself, and that the devices which have been narrated were adopted solely for the purpose of enabling him to gain a commission from the owner on a sale which in truth and substance was from the beginning to the end intended to be what in fact it finally became a conveyance to himself. The plaintiff having secured the defendant as purchaser had, so far as he was concerned, become entitled to his commission. If the owner, knowing that Ross was merely the tool or agent of the defendant, had made the conveyance to him, the plaintiff could have recovered his commission from the owner. *Willard* v. *Wright,* 203 Mass. 406. *Cohen* v. *Ames*, 205 Mass. 186. *Woods* v. *Lowe,* 207 Mass. 1. If the jury found that the defendant, having had his attention called to the property through the agency of the plaintiff, and having utilized his service for the purpose of ascertaining the lowest price at which the property could be bought, then invented the scheme which has been outlined for the purpose of getting for himself the commission which the plaintiff in fact had earned, intending all the while to be the real purchaser, then he has obtained through fraud the money which in equity and in good conscience belonged to the plaintiff. It is true, as the defendant contends, that the burden is upon the plaintiff to show that the transaction was a fraud, and that where the inferences deducible from the facts are as consistent with the defendant's innocence as they are with his fraudulent conduct, the

plaintiff has not sustained the burden of proof. *Smith v. First National Bank,* 99 Mass. 605. *Crowell v. Moley,* 188 Mass. 116. *Childs* v. *American Express Co.* 197 Mass. 337. *Bigwood v. Boston & Northern Street Railway,* 209 Mass. 345. But it well might have been found by the jury that the whole transaction between the defendant and Ross savored so strongly of fraud on the rights of the plaintiff as to outweigh any other reasonable inference.

Where a party has obtained money by fraud which in truth belongs to some one else, it may be recovered in an action for money had and received. *Earle v. Whiting,* 196 Mass. 371. *McCabe v. Maguire,* 182 Mass. 255. *Heard v. Bradford,* 4 Mass. 326. *Wiley v. Connelly,* 179 Mass. 360.

*Exceptions sustained.*

*P. H. Kelley,* for the plaintiff.
*D. Stoneman,* (*A. P. Gay* with him,) for the defendant.