## DAVIS v. HOWE et al.

No. 14910—Opinion Filed April 8, 1924.

Rehearing Denied May 13, 1924.

1. **Fraud—Burden of Proof.**

Where fraud is charged, it becomes a ques-

tion of fact and must be proved by the party alleging the fraud, and cannot be inferred from facts which may be consistent with honesty of purpose.

### 2. Same—Presumption Against Fraud.

Fraud is never presumed, but must be proved by clear and satisfactory evidence, and when a transaction is fairly susceptible of two constructions, the one which will free it from the imputation of fraud will be adopted.

### 3. Conversion — "Definition" — Burden of Proof—Aiding in Conversion.

" 'Conversion' is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." McClintock et al. v. Parish, 72 Oklahoma, 180 Pac. 689. And where the plaintiff brings action against a party for damages for aiding in the conversion of his property, it is incumbent upon such plaintiff to show that the party charged with aiding in the conversion had actual notice of plaintiff's rights, or had actual notice of the infirmity in the title of the party defendant is charged with aiding in the conversion, before he is entitled to recover a personal judgment for damages.

### 4. Same—Failure of Evidence.

Where, in an action for damages for aiding in the conversion of plaintiff's property, and there is a complete failure in plaintiff's proof to show that the defendant charged knew of the plaintiff's ownership in the property, there is an entire lack of evidence to support a verdict for damages for aiding in the conversion, and a demurrer to the evidence, or motion for a directed verdict, should be sustained.

### 5. Appeal and Error—Failure of Evidence —Reversal.

Where there is no proof offered by plaintiff to sustain a verdict of a jury for damages, but such verdict is, nevertheless, returned a personal judgment thereon for damages and declaring it a lien upon defendant's property cannot be upheld, but should be reversed on appeal.

### 6. Same.

Record examined, and held, that there is no evidence to support the verdict for damages against the defendant; and held, that the personal judgment entered thereon against defendant for damages, and declaring the same to be a lien upon defendant's property, should be reversed, with directions to grant the defendant a new trial.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Charles E. Howe, Nellie E.

Howe, and E. C. Hall, receiver of the property of J. C. Davis, against Bessie Davis, for damages in the sum of $4,500, for wrongfully and fraudulently aiding in the conversion of property belonging to plaintiffs; and to cancel conveyances. Judgment for plaintiffs, and defendant appeals. Reversed and remanded, with directions.

Homer N. Boardman, for plaintiff in error

Gasper Edwards, for defendants in error.

Opinion by SHACKELFORD, C. The plaintiff in error, defendant below, will be referred to herein as the defendant, and the defendants in error, plaintiffs below, as the plaintiffs.

The plaintiffs commenced this action in the district court of Oklahoma county on the 6th of December, 1922. The plaintiffs, by their petition, seek to recover the sum of $4,500 as damages for the wrongful and fraudulent aiding J. C. Davis in the conversion of a part of the proceeds of the sale of a farm of plaintiffs Charles E. Howe and Nellie R. Howe, amounting to $4,500, and to set aside conveyances covering certain property, made by J. C. Davis to the defendant Bessie Davis. It is alleged that plaintiffs had previously obtained judgment against J. C. Davis and that he made certain fraudulent conveyances without any consideration, to the defendant Bessie Davis, for the purpose of hindering and delaying the judgment creditors from collecting their judgment.

After demurrer filed and overruled, defendant answered by general denial, except such allegations as are admitted; and by certain specific denials to the following effect; that she never at any time or in any manner aided J. C. Davis to wrongfully convert the proceeds of the plaintiffs' farm; that she is in no way involved in the case of plaintiffs against J. C. Davis, and knew nothing about the conditions under which the judgment was taken against J. C. Davis; and that J. C. Davis did not wrongfully convert the proceeds of plaintiffs' farm; and that the transfers of property made to her were not for the purpose of hindering and delaying plaintiffs in the collection of their judgment, but were transferred to her for valuable considerations, and that she is now the owner of the property conveyed to her and that plaintiffs have no rights whatever therein. Defendant set up a second defense by plea of the statute of limitations. Plaintiffs replied, joining the issues.

The cause was called for trial on the 16th

of March, 1923, and was tried to a jury, resulting in a verdict for plaintiffs against defendant in the sum of $4,500 with interest at six per cent. per annum from September 23, 1920. Upon this verdict the court rendered personal judgment against defendant in favor of plaintiffs in accordance with the verdict; and decreed the amount to be a lien upon the property described in the conveyance sought to be set aside; and decreed that the said property be treated as trust property in the hands of the defendant to discharge the judgment, and directed execution to issue. The defendant filed motion for a new trial, which was overruled, from which judgment and order overruling the motion for a new trial the defendant prosecutes appeal and the cause is here for review.

The defendant presents the following assignments of error: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) the court erred in overruling plaintiff in error's demurrer to the evidence; (4) the court erred in overruling plaintiff in error's motion for an instructed verdict; (5) the court erred in giving instruction number four; and (6) the court erred in overruling the motion for a new trial.

We will examine these assignments of error under two general propositions or questions:

(1) Are the plaintiffs entitled to a personal judgment for damages against the defendant under the pleadings and proof in the case?

(2) Are the plaintiffs entitled to a judgment fixing a lien upon defendant's property to satisfy the judgment based upon the verdict, under the pleadings and proof in the case?

The allegations of the plaintiffs upon the first proposition are that the defendant knowingly, willfully, and fraudulently aided J. C. Davis in the conversion of certain of the proceeds of the sale of the plaintiffs' farm, amounting to $4,500, and thereby damaged plaintiffs in the said sum.

The facts leading up to this suit, briefly, are that the plaintiffs listed their farm with J. C. Davis as a real estate broker, for sale or exchange, and that Davis effected an exchange of the property of plaintiffs for certain apartment house property in Oklahoma City, on terms satisfactory to the plaintiffs, and plaintiffs made a deed to the farm, leaving the name of the grantee blank, and accepted a deed to the apartment house property, and took possession of the said property and delivered possession of their farm. That at the same time the exchange of property was being made, J. C. Davis was making a deal to sell the farm to still another party, and did sell it. That plaintiffs found out shortly afterwards that Davis had made a profit in turning the farm, of $4,500. It appeared that in making the deal Davis borrowed $4,000 from his wife, and afterwards transferred to her certain notes which he acquired upon the sale of the farm. After the plaintiffs found that Davis had made a profit in handling the farm, they brought suit against him for the amount and prosecuted the cause to judgment against J. C. Davis. After judgment was obtained the plaintiffs, not being able to find property belonging to Davis on which to levy to satisfy the judgment, brought a proceeding in aid of execution, and therein found that Mrs. Davis had handled the notes, or some of them, Mr. Davis got in the sale of the farm and that Davis had sold to Mrs. Davis, defendant, a certain piece of property located in Clinton, Okla., and another in Oklahoma City.

The plaintiffs, upon the trial of this cause, showed that J. C. Davis and the defendant Bessie Davis are husband and wife; that they were married on May 9, 1906, and were living together as husband and wife at the time of the exchange and sale of the plaintiffs' farm, and were living together at the time of the trial of this cause. They showed by the testimony of Charles E. Howe, one of the plaintiffs, that he obtained a judgment against J. C. Davis on the 9th of September, 1921; that a hearing was had in aid of execution on the 28th of October, 1921; that defendant Bessie Davis testified upon that hearing; that plaintiff Charles E. Howe heard her testimony; that Mrs. Davis said she had gone out with Davis to look at the Howe farm and that she furnished Davis $4,000 in making the deal; that she said Mr. Davis was making the deal for Howe, as she understood that he wanted to sell; Howe, the witness, said that he received a piece of property in Maywood addition for his farm and that Mrs. Davis said on that hearing that the property belonged to Mr. Aulbach; that witness had found that Davis had sold the farm to Mr. Miller for $14,000 of which amount he got $2,000 in cash, and $8,000 worth of notes, and the buyer assumed payment of a mortgage for $4,000; and that Mrs. Davis had said $6,000 worth of the notes were transferred to her some time in the latter part of 1920,

but witness Howe, himself, thougnr that the transfer or assignment was made about the first of January, 1921. Witness testified that the $6,000 worth of notes were amply secured by a mortgage on the Howe farm; that Mrs. Davis said, on the hearing in aid of execution, that Mr. Davis told her his general business and that Mr. Davis was using her money. Upon cross-examination Mr. Howe testified in effect that he accepted the Aulbach property in Oklahoma City for his equity in the farm, which is in Washita county, Okla.; that he was willing to make the exchange; that he got just what he thought he was going to receive, but after he found that Davis had made a profit in the transaction in the sale of the farm, he wanted it; that Mrs. Davis said when she was talking about getting the $6,000 worth of notes, that her husband J. C. Davis owed her $12,000 and she took the notes in part payment; that Mrs. Davis said concerning the exchange of property: "I just heard him mention it. He said he was awful anxious to make the deal sometime in August. He said he needed $4,000 to make the deal. I never asked him what he wanted with it." The witness Howe then testified that all he knew about Mrs. Davis's connection with the deal was what Mrs. Davis herself had said about it, and the sum and substance of it was that Mrs. Davis knew there was a deal between Mr. Howe and Mr. Aulbach which J. C. Davis was handling, and that he needed $4,000.

The foregoing is the substance and effect of all the evidence offered on the part of the plaintiffs for the puropse of establishing their right to a personal judgment against the defendant Bessie Davis. The defendant demurred to the evidence and demurrer was overruled and exception allowed.

In so far as this action sought to recover personal judgment for damages for conversion of plaintiffs' property, it was a law action, triable to a jury. The defendant is charged with knowingly and fraudulently converting plaintiffs' property, or aiding therein. It is not contended that the plaintiffs are entitled to a personal judgment for damages against defendant unless the conversion was knowingly and fraudulently done.

The notes which were assigned to defendant Bessie Davis were made payable to J. C. Davis and signed by a Mr. Miller. There was nothing about the instruments themselves that could have in any way suggested to defendant, or to anybody, that $4,000 of the value of the $6,000 worth of notes be-

longed to plaintiffs, even if it did so belong to them. There is nothing in the evidence offered by plaintiffs that can be treated as establishing as a fact that defendant Bessie Davis knew that plaintiffs owned $4,000 worth of the value represented by the notes, or that she in an way knowingly aided J. C. Davis to convert them to the hurt of the plaintiffs. If there was anything to put her on inquiry, the fact she would, perhaps, have learned was that the notes were proceeds of a sale of a piece of land plaintiffs had formerly owned; and had she made inquiry of the plaintiffs she would have learned that plaintiffs traded their equity in the farm for the equity in the apartment house property and that plaintiffs had gotten just what they traded for, at least, it would appear that such was what she probably would have learned, since the witness Howe testified in this case that at the time he got just what he traded for.

In Kemper, Hundley & McDonald Dry Goods Co. v. Fischel, 4 Okla. 250, 44 Pac. 205, it was said:

"Fraud is a question of fact and must be proved. It cannot be inferred as a fact from facts which may be consistent with an honest purpose"

—and this is the rule generally.

In William J. Lemp Brewing Co. v. Guion et ux., 17 Okla. 131, 87 Pac. 584, it was held, in substance and effect, that:

"Where there is nothing to show how one came into possession of certain money, the presumption is that one came by it honestly and not by a fraudulent transaction."

That being the rule, where there is nothing to show how the party obtained the money or property, the presumption should be as great where the evidence tends to show honesty of purpose, or where the evidence and the inference to be drawn therefrom is as consistent with honesty of purpose as otherwise.

In Young v. Blackert et al., 51 Okla. 285, 151 Pac. 1057, it was held that:

"Fraud must be proved at law. In equity it suffices to show facts and circumstances from which it may be presumed."

And, in Ely Walker Dry Goods Co. v. Smith, 69 Okla. 261, 160 Pac. 898, it was held that:

"Fraud, though in equity it may be inferred from circumstances, must be shown and brought home to the opposite party by clear and convincing proof."

And, in Dunn v. Claunch et al., 13 Okla. 577, 76 Pac. 143, it was said:

"And an intent to defraud is never presumed but he who alleges such intent must prove it"

—and this is the rule in every jurisdiction from which we have examined the cases.

In Henderson v. Gilliland et al., 187 Ala. 268, 65 South. 793, it was held that:

"Fraud is never presumed, but must be proved by clear and satisfactory evidence, and when a transaction is fairly susceptible of two constructions, the one which will free it from the imputation of fraud will be adopted."

To like effect are: Blackwell et al. v. Kinney et al., 119 Ark. 578, 180 S. W. 757; McKennan v. Mickelberry et al., 242 Ill. 117, 89 N. E. 717; Gormley v. Dangel, 214 Mass. 5, 100 N. E. 1084; Snow v. Wathen, 127 App. Div. 948, 112 N. Y. Supp. 41.

This is the universal rule so far as we have been able to find.

The $6,000 worth of Miller notes were turned over to defendant Bessie Davis on about October 5, 1920. There is no showing made in this record that Mrs. Davis even knew that the plaintiffs were making claim of wrong doing on the part of J. C. Davis until the hearing in aid of execution held on the 28th of October, 1921, and long after the notes had passed out of her hands; and the record affirmatively shows that she had loaned J. C. Davis $4,000, and that the notes were assigned to her as payment on said sum and other indebtedness Davis owed her. There is nothing to show that the defendant even knew that J. C. Davis had been sued by the plaintiffs until about the time the hearing in aid of execution was had. Whatever might have been the purpose of Davis to do the plaintiffs a wrong, if he had any such purpose in mind, and about which we express no opinion herein, there is nothing to show that defendant Bessie Davis knew anything of the wrongful purpose and intentions of J. C. Davis toward the plaintiffs at the time she got in possession of the notes or at any time during the time she had them in her control; and there is no act shown upon the part of the defendant inconsistent with absolute honesty of purpose.

The defendant Bessie Davis is charged with knowingly aiding J. C. Davis in converting property belonging to plaintiffs.

In McClintock et al. v. Parish, 72 Okla. 260, 180 Pac. 689, this court held that:

"'Conversion' is any distinct act of do-minion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

In McJunkin v. Hancock et al., 71 Okla. 257, 176 Pac. 740, it was held that:

"Conversion consists in a tortious act by the defendant by which he deprives the plaintiff of his goods, either wholly, or but for a time"

—and that:

"To maintain the action of trover there must be either a taking from the owner, or an unwarranted assumption of control and ownership over the thing"

—and that:

"The mere purchase of personal property in good faith from one who has no right to sell it, is not conversion of it against the lawful owner, until his title has been made known and resisted."

In Dickey v. Adler, 143 Mo. App. 326, 127 S. W. 593, it was held that:

"In an action for conversion of a certificate of deposit, it was incumbent on plaintiff to show that defendants who received the certificate from their codefendant had actual notice of the infirmity of the latter's title."

An examination of the record here presented shows that there was not only a complete failure to show any participation by defendant Bessie Davis, in inducing plaintiffs to make the deal out of which their complaint grew, but a complete failure to show that she knew anything of the fraud and wrong that had been perpetrated upon the plaintiffs by J. C. Davis, if in fact any wrong had been done them by J. C. Davis, at the time she bought the notes or at any time while she had them. She loaned J. C. Davis the $4,000 before the deal was terminated; the notes were turned over to her in October, 1920, and she assigned them in the spring of 1921, and there is nothing to show that she ever knew that plaintiffs were making claim that J. C. Davis had in any way wronged them until October, 1921. That being the state of the record there is no evidence on which to base a verdict or personal judgment for damages against the defendant Bessie Davis. There was nothing to go to the jury. The demurrer to plaintiffs' evidence should have been sustained. At the close of all the evidence the defendant moved for a directed verdict. The motion should have been sustained and the jury instructed to return a verdict for the defendant.

Having reached the conclusion that the verdict against the defendant Bessie Davis

for $4,500 and personal judgment against her for said sum, cannot stand, it follows that the judgment declaring a lien upon her property to the amount of $4,500 in favor of plaintiffs to satisfy such judgment must also fall.

The judgment of the trial court should be reversed and the cause remanded with directions to grant the defendant a new trial; and we recommend that this be done

By the Court: It is so ordered.