MEEKER & CO. v. ASHLEY ET AL.

THE SAME v. ANDERSON.

THE SAME v. THE SAME.

1. **Taxation**: IN AID OF RAILROADS: CONDITIONS OF TAX.   Where, prior to an election to vote upon the question of aiding in the construction of a certain railroad by a township tax, a paper was circulated among the electors, signed by the president of the railway company and having the corporate seal attached, providing that in case a tax was voted it should be collectible only at specified times and on certain conditions, which paper was issued by and with the consent of a majority of the directors of the company, it was held that the company was bound by its provisions.

2. ——: ——: ——.   Where a tax is voted payable only on condition that the road is constructed and ironed to a certain point, such condition is not fulfilled by the construction of a part of the line and the purchase of the remaining portion.

*Appeal from Jasper Circuit Court.*

THURSDAY, JUNE 9.

ACTIONS of *mandamus* to enforce the collection of certain taxes voted by the electors of Palo Alto and Fairview townships, Jasper county, in aid of the construction of the Iowa, Minnesota and North Pacific Railway.   The first action is against the trustees of Palo Alto township, to compel them to certify the tax had been earned.   The second is against the county treasurer to compel him to collect the tax of the same township, and the third is against the same officer to compel him to collect the tax voted in Fairview township.

There was a trial to the court and judgment was rendered for the defendants, and the plaintiffs appeal.

*Cook & Dodge* and *Ryan Brothers*, for appellants

*H. S. Winslow*, for appellees.

SEEVERS, J.—I.   *As to the taxes voted in Palo Alto township.*   The articles of incorporation of the railway company declare the object of the corporation to be, "to acquire, construct, maintain and operate a railroad, commencing at a point hereafter to be determined upon in the southern or southeastern portion of the State of Iowa, and running thence through the counties of Jasper, Story, and Hamilton, via Nevada and Webster city, in a northwesterly direction to the northern boundary line of the State of Iowa."

The tax was voted on the 20th day of April, 1872, and the notice for the election submitted to the electors "the question of aiding, by a tax of five per cent upon the assessed value of the taxable property of the said township, in the construction of the Iowa, Minnesota & North Pacific Railway, the same being a line of railway projected to and from some point in the southeastern part of Iowa through the counties of Jasper, Story, and Hamilton, by way of Newton, Nevada, and Webster City to the northern boundary of the State of Iowa."

· On the day of the election and before there was "circulated among the voters and was believed by many of the voters and influenced them in the course they took, inducing them to vote for the tax," a paper signed by the president of the company, with the corporate seal attached, in which among others was the following provision: "First. Said tax shall be payable in three instalments, as follows, viz.: two-fifths of the amount on the first day of January, 1873, or when the road is ironed from the Des Moines Valley Railroad to Newton and the cars running thereon; two-fifths of the amount on the first day of October, 1873, and the balance on the first day of March, 1874." The fact that an election was about to be held for the purpose of voting taxes to aid in the construction of said railroad was recited in said paper, and therein the said company did "agree with the said trustees for the use and the benefit of tax payers of said township that said tax shall be voted on·

1. TAXATION: in aid of railroads : conditions of tax.

the basis of the following agreement." Immediately follow-
ing was the provision above quoted and set out. Below the
signature of the president of the company, but atttached to
and forming a part of said paper, was the following: "The
citizens will observe by the first section of the law passed
by the legislature February 16, 1872, that all contracts and
conditions made by the railway company with the people
must be strictly complied with." Following this is the first
section of the act approved February 16, 1872, printed in
full. Laws of Fourteenth General Assembly, page 2.

The paper aforesaid "was issued by and with the consent
of a majority of the Board of Directors" of said company,
"and was circulated and used by some of the directors * * *
to induce the citizens to vote the subsidy asked for, and with
some it had that effect, but there is nothing in the records of
the directors' meeting showing express authorization of such
action. It was, however, believed the same was valid and bind-
ing on the company by both its officers and the voters, and
both parties relied upon it.

We think it clearly appears from what has been stated the
electors had the right to believe the company would com-
plete and iron the road, in aid of the construction of which
the tax was about to be voted, from the Des Moines Valley
Railroad to Newton. The only fair construction to be given
to the paper signed by the president of the company is that
the tax was voted on condition the road then being con-
structed was ironed as aforesaid and the cars run thereon.
There were voters who so believed, and accordingly voted for
the tax. This being so the company should not now be per-
mitted to say there was no valid agreement to this effect.
But we think the agreement is valid and binding on the com-
pany on the ground, in the absence of any showing to the
contrary, that the president must be presumed to have had
authority to make it, when done " with the consent of a ma-
jority of the directors." The fact that such consent has not
been entered of record is immaterial. The articles of incor-

poration do not require that everything done by the directors in order to be binding on the company shall be entered of record. In fact there is no provision on the subject. The next question is whether such condition has been complied with.

What was at one time known as the Des Moines Valley Railroad passes through the town of Monroe, in said Jasper county, from which point the road in question has been constructed, northerly, in the direction of Newton. At the time the tax was voted a railroad had been constructed by the Chicago, Newton & South Western Company from Newton "in a southerly direction to some coal banks in the direction of Monroe." The length of this road is about three and one-half miles, and the distance from Monroe to Newton is believed to be about seventeen miles. The Iowa, Minnesota and North Pacific Railway Company purchased the above mentioned road three and one-half miles in length, connected the road constructed by it therewith, and thus it is claimed the road has been ironed and cars run thereon from the Des Moines Valley Railroad to Newton.

Under the statute taxes cannot be voted to purchase a constructed railroad. *Lamb v. Anderson*, 54 Iowa, 190. The contention in the cited case was in relation to enforcing the collection of taxes voted in aid of this same railroad, and the point determined was that the collection of such taxes could not be enforced because of the purchase instead of construction of the three and one-half miles of railroad aforesaid. We do not think there is any distinction between the two cases, but there is the additional consideration in this case that the tax was voted on the condition the road then being constructed should be ironed and cars run thereon. This condition cannot be regarded as complied with by the purchase of a constructed road.

II. *As to the Fairview township taxes.* Previous to the election the railroad company made a contract with the

trustees of said township whereby the company agreed " that any and all taxes so voted in said township may remain unpaid until the road bed of said railway is graded, tied and ironed from the town of Newton to the town of Monroe."

The validity of this agreement is not denied, but it is insisted, as we understand, the company thereunder was only bound to construct its road in that township, and might well purchase a constructed road no part of which was in said township. What has been heretofore said applies with full force to the taxes of this township. The contract applies, we think, to the whole road between Monroe and Newton. The road then being constructed was to be ironed. This has not been done, and therefore the collection of the tax cannot be enforced. In all the cases the judgments are

AFFIRMED.