## HILL v. CHAMBERLAIN et al.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. FRAUD—MORTGAGE—FORECLOSURE SALE.
    Procuring a mortgagor to allow his property to be sold at an inadequate price at foreclosure sale by an agreement that the purchaser will act on behalf of the mortgagor is fraud, which will authorize a recovery of damages, though the agreement is not sufficient to constitute a valid contract.

2. SAME—SUFFICIENCY OF EVIDENCE.
    Plaintiff's testator was the owner of real estate of the value of about $15,000 according to plaintiff's witnesses, and about $5,500 according to defendants' witnesses, which was incumbered in the sum of $5,300 at the time of foreclosure sale to one of the defendants for the amount of the incumbrance. Plaintiff testified that the defendants had agreed to purchase the property for the benefit of herself and her testator, and had promised to sell a portion and reconvey the balance to plaintiff or her testator, and a writing of one defendant stating that all the price over the incumbrance would belong to the plaintiff was admitted in evidence. The defendants denied such agreement. *Held* to sustain a verdict for plaintiff in an action for fraud in procuring the land for an inadequate consideration by means of such alleged agreements.

Appeal from trial term, Wayne county.

Action by Catherine A. Hill, as executrix of George W. Hill, deceased, against Dwight S. Chamberlain and others, to recover damages resulting from the unlawful acts of defendant in purchasing real estate for an inadequate consideration at a mortgage foreclosure sale, by reason of false and fraudulent representations. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Thad. Collins, Jr., for appellants.

Frank C. Sargent, for respondent.

McLENNAN, J. On January 29, 1898, and for several years prior thereto, George W. Hill, the plaintiff's testator, was the owner of certain real property situate in the village of Lyons, Wayne county, N. Y. Such property consisted of a house and lot called the "homestead," and of five other houses and lots located upon Cherry street, in said village. The property was incumbered at the time by a mortgage held by Celia B. Tucker, upon which there was due and unpaid the sum of $3,025.74; also by two other mortgages, amounting in the aggregate to $1,684.38. There were also insurance and taxes due and unpaid, amounting to the sum of $54.90. At the time in question Hill was also indebted to the defendant Dwight S. Chamberlain upon a promissory note for $103.25, and for some other small amounts. The evidence given on behalf of the plaintiff tends to show that the property in question was worth from twelve to fifteen thousand dollars. The witnesses on behalf of the defendant place the value of the property at from $4,300 to $5,500. Prior to the 8th day of December, 1897, an action was commenced by Celia B. Tucker in the county court of Wayne county to foreclose the mortgage held by her, and which was a lien upon the property in question. The defendant Dwight S. Chamberlain, who is an attorney and counselor at law, was the attorney of record, and such proceedings were had in that action that on said 8th day of December, 1897, a judgment of foreclosure and sale was duly entered. Thereafter, and on the 29th day of January, 1898, the property was sold at public auction by the defendant Dwight P. Chamberlain, who was appointed a referee for that purpose, who is a son of the defendant Dwight S. Chamberlain, and at the time in question was employed in a bank in the village of Lyons controlled by his father, who occupied offices in the bank building. The property was purchased on the foreclosure sale by Dwight S. Chamberlain and Celia B. Tucker, the plaintiff in the action, for $2,705, and an order was duly entered confirming such sale. Afterwards the defendant Dwight S. Chamberlain purchased the interest of said Celia B. Tucker in the property, paying her therefor the amount due upon her mortgage, principal and interest, and received a conveyance of the property. At the time of the purchase of said property by the defendant Dwight S. Chamberlain the claims against

the property of all kinds, including the costs and disbursements in the foreclosure action and the amount which plaintiff's testator owed to the defendants, amounted in the aggregate to substantially $5,300, and the plaintiff's testator received nothing in addition thereto for said property. It is claimed on behalf of the plaintiff that the defendants, conspiring together, by means of false and fraudulent statements and representations induced George W. Hill, deceased, the plaintiff's testator, to permit the mortgage held by Celia B. Tucker to be foreclosed, and to refrain from bidding upon the property at the foreclosure sale, for the purpose and with the intention of obtaining the same for much less than its real value, and for the purpose and with the intent of cheating and defrauding said George W. Hill, deceased. And it is claimed that in furtherance of such fraudulent scheme the defendant Dwight S. Chamberlain promised and agreed that if George W. Hill, deceased, would permit him to become the purchaser of the property at the foreclosure sale, he, said Chamberlain, would deed to the said George W. Hill, deceased, the homestead, free and clear of all incumbrances, and that the defendant Dwight S. Chamberlain would hold the balance of the property as trustee for said Hill, and would sell the same at its fair value on or before the 1st day of July, 1898, and pay the proceeds thereof to said George W. Hill, deceased, after deducting the amount of the liens against said property, and the amount due and owing to said Dwight S. Chamberlain. The only witness who gave evidence on behalf of the plaintiff in support of these allegations is the plaintiff herself, her testator having died prior to the trial. She testified that at the time the action of foreclosure was commenced, and for some time prior thereto, her husband had advertised the property for sale in the newspapers; that while the property was being so advertised, and in October, 1897, her husband received a letter from Dwight S. Chamberlain, which was put in evidence, in which he advised her husband that the best way to get rid of the property was to have the mortgage foreclosed, and stating, in substance, that, if her husband agreed, he would start the foreclosure. She also testified that on November 9, 1897, her husband received another letter from the defendant, which was also put in evidence, and in which he stated:

"That by foreclosure and sale is the only proper way for you to dispose of your property under the present circumstances. * * * You might as well stop your 'Notice of Sale' in the paper, as it is only a needless expense. Every [one who] would purchase any portion of the property will wait for the foreclosure sale, hoping to get it cheaper than they could otherwise. I will push matters as fast as possible."

Another paper, in the handwriting of Frederick W. Chamberlain, was put in evidence, which was received by plaintiff's testator, in which it was stated:

"The property has got to sell for at least $5,700. If we have to bid it in, you can rest assured it will be for you, and anything you choose to take for it over that price is yours,—$4,700. We don't want any more real estate at any price."

The plaintiff also testified that she saw the defendant Frederick W. Chamberlain coming out of the Globe Hotel, in the city of Syra-

cuse, in company with her husband, and that her husband said in the presence of Chamberlain: "It will be sold for our benefit. The Chamberlains will keep up to the contract he has made to us,"— and the defendant Frederick W. Chamberlain answered: "Yes, Mrs. Hill; it will be bid in for your benefit." The witness testified: That upon the same occasion Frederick Chamberlain said that, if the property did not sell for what it was worth, "Mr. Chamberlain would bid it in for our benefit; he was to bid four houses for our benefit; and that, under all considerations, the homestead was to be reserved for us." That he was to sell the houses in June, take his mortgage out and his expenses, and the balance was to be turned over to the husband of the witness. The witness further testified: That she went to Lyons on the 22d day of January, 1898, the day on which the property was advertised to be sold. That both the defendants were present. That, without consultation with the plaintiff or her husband, the sale was postponed until January 29, 1898, although it was a pleasant day, and a large number of people were present. That the property was sold on the 29th day of January, 1898, to Dwight S. Chamberlain; he being the only bidder, and there being only two or three persons present besides the plaintiff and her husband. That after the sale the plaintiff and her husband went to Dwight S. Chamberlain's office, and had a private talk with him. That he told the plaintiff's husband upon that occasion to "make himself perfectly easy; that everything was for our benefit." That her husband answered: "Yes, Katy dear; Dr. Chamberlain will do just exactly as he said." And that Chamberlain said "the deed of the homestead would be made over to us. He said he would sell the houses in June; he would clear the mortgage, and all above the mortgage would be turned over to us." The witness testified that on the 11th day of February, 1898, her husband committed suicide, and that on the day of the funeral she saw the defendant Dwight S. Chamberlain, and asked for a deed of the homestead; that he said he would give a deed to her, and that he would also sell the houses in June, and give the witness all above the mortgage and his expenses. The witness testified that on the day after the funeral of her husband she saw the defendant Frederick W. Chamberlain, and that he said: "Mrs. Hill, go back to Syracuse. Come up here in April, and I will sign the deeds of the homestead over to you, and you can move in in April." She stated that he also said something about selling the balance of the property in the meantime. "He said his father would sell the houses in June." The witness testified that in April following she saw the defendants again, and demanded that the agreement made by them as claimed by her should be carried out, and that they both repudiated the agreement, claimed to be the absolute owners of the property, and that they were not indebted to the estate of her husband in any sum whatever. The defendants denied that any such representations had been made by them, or that any such agreement as claimed by the plaintiff had been entered into by them, or either of them. We think, however, that it was a question of fact for the jury to determine as to the truthfulness of the

plaintiff's version of the transaction. The questions of fact were submitted to the jury by the learned trial court in a fair and impartial charge, and they found by their verdict the essential facts to be as claimed by the plaintiff. A motion for a new trial was made before the presiding justice, who saw the witnesses and heard all the testimony, and after careful consideration the motion was denied; and the court said in an opinion:

"The evidence, in my opinion, was sufficient to require the question to be submitted to the jury whether the agreement in controversy was in fact made, and whether Hill was fraudulently induced to enter into it by the defendants, with the fraudulent purpose on their part of preventing him from taking steps that he otherwise would have taken for his own protection, and whether such conduct on the part of the defendants was with the purpose of depriving Hill of his title, so that they might obtain it for themselves. In other words, the evidence made the case one for the jury, not for the court. * * * Defendants' evidence was contradictory of and in conflict with the evidence of plaintiff in the respects referred to. But this only emphasizes the reason for the enforcement of the rule that differences in the evidence upon questions of fact and the inferences to be drawn therefrom, in cases of alleged fraud, are for the jury."

We think the learned justice stated the correct rule, and that it ought not to be held by this court that the evidence was not sufficient to support the verdict rendered. Assuming, then, that under the evidence, and considering all the circumstances, the jury were justified in finding the facts substantially as stated by the plaintiff, we think she was entitled to recover.

No question of law is involved which requires discussion. If the defendants, conspiring together, induced plaintiff's testator to permit the mortgage in question, which was a lien upon his property, to be foreclosed, and by false and fraudulent means, or by means of promises and agreements, although not sufficiently definite to constitute a valid contract, induced him to refrain from bidding upon such property at the foreclosure sale, and thus caused him to permit his property to be sacrificed, the defendants are liable for the damages resulting from such acts or conduct. The defendant Dwight S. Chamberlain was an attorney at law, and, as appears by the evidence, had known George W. Hill in his lifetime for many years, and had had business relations with him, and of such a character as might readily lead Hill to rely implicitly upon any statements which the attorney might make, and to follow his advice implicitly. Considering all the facts and circumstances, it is concluded that the verdict of the jury rendered in this case should be regarded as final upon the questions of fact, and that the judgment entered thereon, and the order denying defendants' motion for a new trial, should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except ADAMS, P. J., not voting.