## McLEAN v. SOUTHWESTERN CASUALTY INS. CO. OF OKLAHOMA et al.

No. 5435—Opinion Filed Nov. 30, 1915.

Rehearing Denied Oct. 10, 1916.

### 1. Evidence — Parol Evidence Affecting Writings—Showing Invalidity of Contract—Fraud.

The effect of evidence introduced to show that a written contract was induced and obtained by material false and fraudulent representations is not to contradict or vary the terms of the written contract, but to show that the party signing the contract was imposed upon, and that fraud was practiced in obtaining his signature thereto; and such evidence is always admissible to show that contracts have been fraudulently obtained. No exact rule can be laid down by which every case of fraud can be tested; but the court must determine, under the broad principles of equity, whether or not what was done in each particular case amounts to cognizable fraud.

### 2. Fraud—Elements—False Promise.

There is a wide distinction between the non-performance of a promise and a promise made mala fide, and without any intention at the time of making it to perform it. And while ordinarily a statement upon which fraud may be predicated must be of an existing fact, yet if a promise is made to be performed in the future, as an inducement to obtain a contract, if the intention not to perform the promise be shown to have existed at the time the promise was made, such false promise constitutes cognizable fraud.

### 3. Corporations — Agents — Authority — Ratification.

Where a corporation arms persons with blank contracts to take stock subscriptions for the company, and they obtain subscriptions, through false and fraudulent representations, and promise to do certain things, it is immaterial whether they were authorized by the company to make these representations and promises or not. If the company accepts the benefits of their misrepresentations, it must also bear the burdens of the same; and if the company is unwilling to be bound by their misrepresentations, it must surrender the benefits obtained under them.

(Syllabus by Brett, C.)

Error from Superior Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by George D. McLean against the Southwestern Casualty Insurance Company of Oklahoma and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Stuart, Cruce & Cruce, and Gilbert & Bond, for plaintiff in error.

Ledbetter, Stuart & Bell, for defendants in error.

Opinion by BRETT, C. This action was commenced in the superior court of Oklahoma county by the plaintiff in error, as plaintiff, against the defendants in error, as defendants, to rescind a certain contract and recover the sum of $1,375, alleged to have been obtained under said contract. The ground alleged for rescission is that the contract was induced and obtained by fraud. The facts material to the issues before us are: That the defendant company the Southwestern Casualty Insurance Company of Oklahoma had, prior to March 7, 1910, been duly incorporated as an accident and casualty company, and was perfecting its organization by the sale of stock, and through its agents sold to the plaintiff, who was a physician, $5,000 worth of stock, under the promise and agreement that if he would take the stock the company would employ him as its medical examiner at an agreed salary of $1,500 per year. That plaintiff paid $1,375 in cash on said subscription, and gave his notes for the deferred payments. The plaintiff alleges further that the sole inducement and consideration prompting him to purchase this stock was the agreement to employ him at the stipulated salary as medical examiner, that after obtaining his subscription and the cash payments the defendants refused to employ him, and that the representation of the intention of the defendant to employ him as its medical examiner was false, and known to the defendant to be false at the time of making same, and was made without any intention on the part of the defendant of performing the same, and that it was through no fault of his that he was not employed; that he had never received any stock of the company; and asks for a rescission of the contract, and the return of the $1,375 paid. The defendants answered by general denial, and alleged that if any promise or contract to employ the plaintiff at a salary of $1,500 per year was made, it was made without the authority of the company, and was therefore not binding

upon the company. Plaintiff filed a reply denying all affirmative allegations in the defendants' answer. The cause came on for trial to the court and a' jury. The testimony of the plaintiff fully sustains the allegations of his petition. On cross-examination the defendant · produced and introduced, in evidence, among other documents as part of its cross-examination. the contract of stock subscription, which is as follows:

"I, Dr. Geo. D. McLean of Oklahoma City, Okla., hereby subscribe for 90 shares of the capital stock of the Southwestern Casualty Insurance Company, of Oklahoma, City, Oklahoma, at and for the price of $50.00 per share (par $25) upon the following terms and conditions: I agree to pay $15.00 per share in cash with this subscription, and give two notes for the remainer of the purchase price, as follows: One note for $10.00 per share due April 1st, 1910, and the other for $25.00 per share due on demand after September 1st, 1910. As soon as the full purchase price, is paid hereon in cash, a certificate for the stock showing same to be fully paid and nonassessable to be issued and delivered to me. It is further understood and agreed that no conditions other than those printed herein shall be binding on the company, and that all cash payments hereon shall be the liquidated damages to the company should I fail or refuse to complete this subscription.

"Dated and signed this 7th day of March. 1910, at Oklahoma City, Okla.

                    "Geo. D. McLean, Subscriber.
"Physician · and Surgeon, Occupation."

At the close of plaintiff's evidence defendant demurred to the evidence on the ground that it sought to vary the terms of a written contract, and because the allegations of fraud were insufficient to raise the issue of fraud, sufficient to go to the jury. The demurrer was sustained, and judgment rendered for defendants, and the plaintiff appeals to this court.

There are a number of assignments of error, but the decisive question in the case is whether or not the allegations and evidence of the plaintiff sufficiently raised the question of fraud to go to the jury. We think they did. The defendants argue that:

"The written contract entered into by plaintiff is clear and explicit, and expressly forbids any agreement or conditions other than those printed therein being binding on the company, and that the plaintiff is a physician of high standing, and thorough education, and was capable of reading and understanding the contract signed, and therefore should be bound by the written contract signed by him"

—and cite McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524, 138 Am. St. Rep. 803, and other cases to the same effect,

in support of their contention. But the rule of law in these cases is not applicable, where the party alleges and proves that he was induced by material, false, and fraudulent representations, to enter into a contract which he would not have entered into but for such' false and fraudulent representations. The purpose and effect of the evidence introduced in the case at bar is not to contradict or vary the terms of the written contract, but to show that the plaintiff was imposed upon, and that fraud was practiced in obtaining his signature thereto. Fraud vitiates everything it touches, and a contract obtained thereby is voidable. And evidence is always admissible to show that contracts have been fraudulently obtained. In Cooper v. Ft. Smith & Western R. Co., 23 Okla. 139, 99 Pac. 785. Mr. Justice Turner. speaking for the court, says:

"In an English case (Canham v. Barry, 15 C. B. 597) the gauge by which the materiality of a statement is to be determined is stated, in substance, as follows: A contract may be avoided by a false and fraudulent representation, though not relating directly to the nature and character of its subject-matter, if it is so closely connected with the contract that the party sued would not, but for the representations, have entered into it, and was induced to enter into it, to the knowledge of the other party, by such representation—citing Hammond v. Pennock, 61 N. Y. 152; Moens v. Heyworth 10 M. & W. 147; Valton v. National Fund Life Ass'n, 20 N. Y. 32. Further in that case, the court says: 'Under the rule as stated in these cases. either party to a contract may make a collateral statement, made by the other party during the negotiation as to the existence or nonexistence of a particular fact, a material one in his own judgment. So if it turns out to be untrue, and was falsely and fraudulently made, it will vitiate the contract if he relied upon the same as true, and would not have entered into the contract but for the statement.' "

Mr. Justice Turner in this opinion further says:

"John C. Smith v. William Countryman, 30 N. Y. 670. was an action to recover damages for the breach of a contract to deliver a quantity of hops, the buyer represented that he had purchased F.'s hops for 12½ cents a pound. The seller was ignorant of the price of hops, reluctant to sell, and, relying on such representation and believing it to be true, and having confidence in the prudence and judgment of E., agreed to sell his hops to the buyer for 12½ cents a pound. The statement as to the purchase of E.'s hops was untrue. It was held that the seller was at liberty to refuse to fulfil the contract on the discovery of fraud. The court, in passing, quoted approvingly from the language of Mr. Justice Storey in Doggett v Emerson, 3 Story, 733, Fed. Cas. No. 3,960,

where the eminent jurist said. 'It is equally promotive of sound morals, fair dealing, and public justice and policy that every vendor should distinctly comprehend, not only that good faith should reign over all his conduct in relation to the sale, but that there should be the most scrupulous good faith, an exalted honesty, or, as it is often feliciticously expressed, uberrima fides, in every representation made by him as an inducement to the sale. He should literally. in his representation, tell the truth, the whole truth and nothing but the truth. If his representation is false in any one substantial circumstance going to the inducement or essence of the bargain, and the vendee is thereby misled. the sale is voidable. and it is usually immaterial whether the representation be willfully and designedly false or ignorantly and negligently untrue. The vendor acts at his peril, and is bound by every syllable he utters or proclaims, or knowingly impresses upon the vendee, as a true or decisive motive for the bargain.' "

Many other cases might be cited and quoted to the same effect, but we deem it unnecessary, since, we think, this is the sound rule and the established doctrine of this court. And it is not in conflict with the cases cited by the defendants.

It is not the policy of the law to lay down fast and specific rules by which every case of fraud arisinig may be tested, but to leave it largely to the conscience of the court to determine, under the broad principles of equity, whether or not what was done in each particular case amounts to cognizable fraud. As stated by Mr. Parsons:

"It is 'of the very nature and essence of fraud to elude all laws, and violate them in fact without appearing to break them in form, and if there were a technical definition of fraud, and everything must come within the scope of its words before the law could deal with it as fraud, the very definition would give to the crafty just what they wanted, for it would tell precisely how to avoid the grasp of the law. Whenever. therefore, any court has before it a case in which one has injured another, directly or indirectly, by falsehood or artifice, it is for the court to determine in that case whether what was done amounts to cognizable fraud." 2 Parsons on Contracts, 767.

And we think the allegations of the petition and the evidence in the case at bar raise the issue of fraud sufficient to go to the jury.

2. But it is argued by the defendants that representations, to be fraudulent, must be made concerning existing facts, and that promises made to be performed in the future do not constitute fraud. We are aware that many respectable courts without any qualifications lay down this broad rule. But we think the error into which these courts have

fallen consists in not distinguishing between the nonperformance of a promise and a promise made mala fide, and without any intention at the time of making it to perform it. The latter class of promises have repeatedly been held to constitute actionable fraud. In Edginton v. Fitzmaurice, 29 Ch. Div. 459, the learned judge, in speaking of a misrepresentation of a certain company as to its intention with reference to the future conduct of its business, says:

"There must be a misstatement of an existing fact; but the state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained, it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is therefore a misstatement of fact."

And in Cooper v. Ft. Smith & Western R. Co.. supra, where Cooper was seeking to avoid the payment of a note on the ground that it was obtained by false representations respecting the intention of the railroad company, the court says:

"It might be contended that the misrepresentation here relied upon as vitiating this contract, i. e. that if the bonus notes were not given the road would not be built to Guthrie, but probably to a rival town, was simply a misstatement of an intention and not a fact. and hence not sufficient for that purpose. That there must be a misstatement of a material fact goes without further saying, but is not the misstatement of an intention a fact? Is it not a misstatement of the state of mind, and is not the state of a man's mind a fact? * * * We say that if defendant was misled into executing the note sued on by the false and fraudulent representations of plaintiff as to the state of its intentions with reference to the point to which its road was to be extended, as in his answer he says he was, then plaintiff was guilty of making a material misrepresentation of such fact as will vitiate the contract and release defendant from such promise to pay." Webb's Pollock on Torts, page 359.

In Tanner v. Clark, 13 Ky. Law Rep. 922. the syllabus is in part:

"A statement of intention merely cannot be a misrepresentation amounting to fraud, but the statement of matter in the future, if affirmed as a fact, may. as well as a statement of a fact existing at present, amount to a fraudulent misrepresentation."

The syllabus in Pollard v. McKenney et al., 69 Neb. 742, 96 N. W. 679, 101 N. W. 9, states the distinction as follows:

"Ordinarily a false promise, upon which fraud may be predicated, must be of an existing fact, or a fact alleged at the time to exist, and cannot consist of a mere promise to be performed in the future; but, if the intention not to perform the promise be shown

to have existed at the time the promise was made, the promise is fraudulent." 55 Law Journal, 650; Ayres v. French, 41 Conn. 142; Cockrill v. Hall, 65 Cal. 326, 4 Pac. 33; Brison v. Brison, 75 Cal. 525, 17 Pac. 689, 7 Am. St. Rep. 189; Hill v. Chamberlain, 64 App. Div. 609, 71 N. Y. Supp. 639; Gage v. Lewis, 68 Ill. 604.

We think in the case at bar that the evidence clearly raised a question for the jury to pass upon, namely, the character of the promise and agreement of the defendant to employ the plaintiff at a salary of $1,500 per year. And if the defendant misstated its intention, and made this promise mala fide, for the purpose of inducing the plaintiff to subscribe for its stock, and without the intention of carrying it out in good faith, and the plaintiff relied upon it, and was thus induced to subscribe for the stock, it is such a fraud as a court will take cognizance of, and from which it will give relief.

It is also pleaded in the answer of defendants, and insisted upon, that the person or persons making this promise and agreement with plaintiff were without authority to do so, and the company is not bound thereby. But there is some evidence that one of the parties making the representation was a director of the company. But whether he was or not, and whether he was authorized to make such representation or not, the directors delivered to the party taking the subscription blank contracts for the purpose of taking subscriptions of stock; and, under the view we take of the case, it is immaterial whether he was authorized to make this agreement or not; the company accepted the contract induced by these representations, and the $1,375 paid by plaintiff, and must also bear the burdens accompanying this transaction as well as its benefits. In Wickham v. Grant, 28 Kan. 517, a railroad company was selling stock, and one of the directors gave some blank notes to a Swedish friend who, under false representations, induced another Swede to sign one of the notes, which the company accepted; and the court, speaking through Mr. Chief Justice Horton, says:

"As the board of directors of the railroad company delivered to Swanson, a resident director at Lindsborg, the blank notes, and as he chose Carlson to take the notes and obtain subscriptions thereby, the company could not accept such notes and obtain the benefits therefrom, and at the same time disown or disregard the representations and means by which the signers were induced to execute them. * * * It is immaterial, in our view, upon the findings of fact, whether Swanson had any authority to employ Carlson to take subscriptions and to direct him to make the representations so made, or not; and it is likewise immaterial whether he in-

formed the railroad company of the representations made to secure and obtain the subscriptions. The company accepted the notes and must take them as was well said by the court below, 'with their burdens, as well as their benefits.'" Highland University Co. v. Long, 7 Kan. App. 173, 53 Pac. 766; Hoover et al. v. Deffenbaugh et al., 83 Neb. 476, 119 N. W. 1130; Meeker & Co. v. Ashley et al., 56 Iowa, 188, 9 N. W. 124; Curry v. Board of Supervisors Decatur Co. et al., 61 Iowa, 71, 15 N. W. 602.

And in the case at bar, assuming, without deciding, that the person or persons making the representations did so without authority there is no rule of equity and fair dealing that would permit the company to arm persons with blank contracts to take stock subscriptions, and then permit the company to accept the benefits of their misrepresentations and escape the burdens. If the company is unwilling to be bound by their representations, it must surrender the benefits obtained under them.

We think it was error to sustain the demurrer to the evidence, and that the judgment should be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.