HERREID, Respondent, vs. ETTRICK & NORTHERN RAIL-
ROAD COMPANY, imp., Appellant.

*January 10—February 6, 1923.*

*Municipal corporations: Bonds in aid of railroads: Power of mu-
nicipality: Exercise: Railroad already constructed.*

1. Sec. 942, Stats. 1919, grants to towns the right to vote bonds
   to aid in the construction of a railroad not yet built.
2. The power given to towns by secs. 942, 945, and 948, Stats.
   1919, to vote such bonds is an extra-municipal power permit-
   ting the town to engage in an enterprise not within the scope
   of its corporate powers, and must be strictly construed, and
   when exercised must be strictly followed.
3. Secs. 942 et seq., Stats. 1919, do not authorize the granting of
   aid to a railroad already completed and in operation.
4. Where between the time of the last proposition for aid to a
   railroad and the time the certificate of completion was filed
   the only betterments installed were two turntables, the re-
   placement of a few ties, and the purchase of a second-hand
   automobile, such betterments cannot be termed the construc-
   tion of a railroad within the meaning of sec. 942.

APPEAL from a judgment of the circuit court for Trem-
pealeau county: JAMES O'NEILL, Judge. *Affirmed.*

Taxpayer's action to restrain the town officers of the
town of Ettrick from issuing $55,000 of bonds voted by the
town in aid of the construction of the *Ettrick & Northern
Railroad Company.*

It appears that prior to August 5, 1915, said railroad
company proposed to construct a railroad from a designated
point in the town of Ettrick to a designated point on the
line of the Green Bay & Western Railroad Company in
the village of Blair, and that on said day the electors of the
town of Ettrick voted bonds of the face value of $75,000
in aid of the construction of said railroad and said bonds
were on December 27, 1916, issued to the railroad com-
pany by the town of Ettrick. It further appears that on
the 17th day of May, 1918, said town voted to issue its

bonds in the sum of $25,000 in aid of the construction of the same identical railroad, and that said bonds were delivered to the railroad company on or about July 23, 1918. May 31, 1921, the railroad company, notwithstanding said railroad had since December, 1917, been wholly completed, as the fact was, and as the certificates required to be filed by the company before the $75,000 of bonds could be issued to it showed, and notwithstanding the road had since been continuously operated, again proposed to build a railroad between the identically same designated termini and asked aid from the town in the sum of $55,000 to be used in the purchase of its capital stock. The town voted to bond itself, and the defendant officers threatened to issue the bonds. Since the commencement of the suit the railroad has gone into the hands of a receiver, and since its last proposal for aid it has spent not to exceed $500 in permanent betterments. The court restrained the issuance of the bonds, and the defendant appealed.

*E. E. Barlow* of Arcadia, for the appellant.

For the respondent there was a brief by *Cowie & Hale* and *Twesme & Weber,* all of La Crosse, and oral argument by *Quincy H. Hale* and *Clarence Weber.*

VINJE, C. J. The appeal presents the question whether a town can lawfully vote bonds to aid in the operation and maintenance of a railroad already built and which has been in operation for a number of years. It is contended by the appellant that the provisions of sec. 942, Stats. 1919, authorize the town to lawfully vote and issue bonds for such purpose. The part of the section relied upon reads:

"Any county, town, village or city may, in accordance with the provisions of this chapter, issue its negotiable bonds for the purpose of paying for any authorized subscription to the stock or mortgage bonds, or both, issued by any corporation or company organized for building any

railroad, whether of broad, ordinary or narrow gauge, or made of iron, steel or wooden rails, or in exchange for or compromise of any such bonds previously issued for such purpose."

It is well settled that the statute quoted grants to a town the right to vote bonds to aid in the construction of a railroad not yet built. *Whiting v. S. & F. du L. R. Co.* 25 Wis. 167, 186. It is argued by the appellant that the power exists to vote bonds to be used in the purchase of the capital stock of a railroad already completed and in operation, and it is argued that the power to subscribe for mortgage bonds must mean mortgage bonds of a road already completed because it is said such bonds are not usually issued until the road is completed, and it is further argued that the beginning of sec. 945, Stats. 1919, reading: "Whenever any railroad company shall desire a subscription to its stock or bonds, or both," etc., indicates that the railroad may do this at any time after completion as well as before.

These arguments seem somewhat persuasive, but when we synthesize all the provisions relating to the power of towns to issue bonds in aid of railroads we find a clear intention by implication, and also by direct language, that such bonds shall be used to aid in the construction of a road to be built and not in aid of the operation of a road already constructed. The section quoted and the subsequent sections of the same act all relate to the building or construction of a road, and sec. 948 thereof specifically provides that "no such bonds shall be delivered, or be valid if delivered, until the road to aid in the construction of which they were voted shall have been completed and in operation by the passage of cars continuously from one terminus to such points as such company shall have agreed to construct the same in consideration thereof."

The power given is an extra-municipal power permitting the town to engage in an enterprise not within the scope of its usual corporate powers, and therefore must be strictly

construed; and when exercised must be strictly followed. 2 Elliott, Railroads (3d ed.) § 1017; *Young v. Clarendon Tp.* 132 U. S. 340, 10 Sup. Ct. 107; *Phillips v. Albany,* 28 Wis. 340; *Platteville v. G. & S. W. R. Co.* 43 Wis. 493. Thus in *Lawson v. Schnellen,* 33 Wis. 288, it was held that the leasing of an existing road for a few miles was not in compliance with the proposition to build a road, and the issuing of the bonds voted in aid of the building of a road was enjoined. The same rule was applied in *Meeker & Co. v. Ashley,* 56 Iowa, 188, 9 N. W. 124, where it was held that it was not in compliance with the statute for a railroad to purchase an existing railroad between certain termini where the vote of the town was to aid in the construction of a railroad between such points; and in *Minneapolis, St. P., R. & D. E. T. Co. v. Minneapolis,* 124 Minn. 351, 145 N. W. 609, it was held under a statute quite similar to ours that a city could not aid an existing railroad in the construction of a bridge. That court previously, in *State ex rel. Minn. M. R. Co. v. Highland,* 25 Minn. 355, had held that a municipality had no power to issue bonds to aid a railroad already constructed. So it must be held, both upon the construction of our statute and upon cases decided in sister states under similar statutes, that our statute authorizes the issuance of municipal bonds to aid in the construction of a road to be built in the future, but does not warrant the granting of aid to a railroad already completed and in operation.

The proof shows that in the instant case the only substantial additions in the way of betterments to the road between the time of the last proposition for aid and the time the certificate of completion was filed included only the installation of two turntables, the replacement of a few ties, and the purchase of a second-hand Ford automobile. These betterments can in no sense be termed the construction of a railroad within the meaning of the statute.

*By the Court.*—Judgment affirmed.