PANTHER OIL & GREASE MFG. CO. v.
SKILLINGS.
No. 35691.

Supreme Court of Oklahoma.
July 14, 1953.

M. E. Becker, Guymon, for plaintiff in error.

Vincent Dale, Guymon, for defendant in error.

ARNOLD, Justice.

Plaintiff below, plaintiff in error here, filed a verified bill of particulars in the Justice of the Peace Court of Texas County alleging that it was a Texas corporation; that defendant Robert N. Skillings was engaged in the garage business in Goodwell; that defendant was indebted to plaintiff in the sum of $182.10 for and on account of roofing material sold and delivered to defendant at defendant's request, an itemized, verified statement of which merchandise was attached to the bill of particulars; that the original contract was executed by defendant and plaintiff's salesman in which defendant agreed to pay for said roofing material on October 1, 1949; that the debt was due and wholly unpaid. Defendant filed his verified answer and

cross-petition alleging that the contract sued upon was obtained from defendant by the fraud and false representations of plaintiff in that plaintiff through its duly authorized agent falsely and fraudulently represented to defendant that the roofing material was of a different type and quality than that which had been used on certain other mercantile buildings in Goodwell and which had proved worthless and was not manufactured by plaintiff; that if defendant would sign the order for the roofing compound the salesman would return within a period of thirty to sixty days to assist in the supervision and application of the roofing compound; that plaintiff knew said representations were false, made them for the purpose and with the intent that defendant should rely and act thereon, that defendant did rely upon such false representations believing them to be true and so relying was induced to enter into said contract, which he otherwise would not have done; that when said roofing compound was delivered he learned it was of the same type and quality and manufactured by the same people who had manufactured the roofing compound which had proved worthless on several other mercantile buildings in Goodwell; that the salesman did not return within the time promised to supervise the application of said roofing compound, and prayed that the instrument be adjudged void and cancelled; in his cross petition defendant alleged he had paid freight charges in the amount of $12.65 on said roofing compound when delivered to him; that after learning of the fraud, in November, 1949, he elected to rescind the contract and returned all roofing compound to plaintiff, prepaying freight charges thereon in the amount of $13.05, and prayed judgment against plaintiff for the sum of $25.70 and costs.

To this answer and cross petition plaintiff filed its verified reply consisting of a general denial of all new matter, specifically denying any fraud or false representations on its part, alleging that if such representations were made by its salesman he did so without authority of plaintiff and that plaintiff was not bound by such alleged representations; that the contract of sale, the original order blank signed by defendant, specifically provided that the order was non-cancellable, that the company made no representations not shown on the order, that the company was not responsible for the application of the product, and that if the merchandise was not accepted the account became due and payable at once; that plaintiff had refused to accept the shipment from defendant when it arrived in Fort Worth and still refused to accept same.

Trial was had to a jury in justice court which returned a verdict for defendant in the amount of $25.70 and costs. Thereafter plaintiff perfected an appeal to the District Court of Texas County, where trial de novo was had before a jury.

At the trial in District Court plaintiff introduced the original order blank signed by defendant and plaintiff's salesman, which contained the following paragraph in small print:

"This non-cancellable order is the entire agreement. Buyer agrees that Company makes no representations or warranties not shown on this order, and that Company is not responsible for resale or application of products purchased or from any detriments resulting from or after application. Anyone who applies or supervises the application of these products does so as agent of buyer only. Goods not sold on consignment. Title to goods passes to buyer upon delivery to transportation company. If merchandise not accepted or is refused, account becomes due and payable at once. Ordered subject to approval of Company and payable in Fort Worth, Tarrant County, Texas."

At the bottom of the order sheet appeared the picture of the salesman and the words, "C. D. Bryant, Authorized Salesman of Panther Oil & Grease Mfg. Co." Plaintiff also introduced the testimony of its credit manager to the effect that the contract was accepted according to its terms, that if the salesman made any representations or warranties other than those printed on the contract he did so without authority of plaintiff; that the company refused to accept the merchandise when it was returned

to it by defendant. Testimony of a roofing contractor in Fort Worth was also introduced to the effect that he had used the roofing materials of plaintiff and always found them satisfactory.

Defendant's evidence in support of his answer and cross petition was to the effect that when plaintiff's salesman called on him he told the salesman he was not interested in the roofing compound because several other mercantile firms had used it and found it worthless; that the salesman told him this was a different compound and was not made by the same company that made the worthless compound defendant knew about; that the salesman looked at defendant's roof and told defendant if he would sign the order that he, the salesman, would return in thirty to sixty days to assist in the application of the roofing compound to the roof; that upon these assurances he signed the order; that when the roofing compound arrived he paid $12.65 freight charges; that he then learned this roofing compound was manufactured by the same company and was the same type as that which had proved worthless on other roofs in Goodwell; that the salesman did not return as he had promised; that defendant then sent the merchandise back to the company, prepaying freight charges thereon in the amount of $13.05, and called the company telling them what he had done and why; that the company refused to accept the shipment and the merchandise was later sold by the railroad company for storage charges accrued. Corroborating testimony of other merchants who had used the roofing compound and found it worthless was introduced as well as the fact that it was manufactured by the same company, and also corroborative testimony as to the representations made by plaintiff's salesman at the time the contract was entered into by defendant.

Plaintiff's demurrer to defendant's evidence and motion for directed verdict were overruled. The jury returned a verdict in favor of defendant in the amount of $25.70 and judgment was entered in accordance with the verdict. From order overruling motion for new trial plaintiff brings this appeal.

Plaintiff presents five propositions to the effect that a contract in writing supersedes all oral negotiations which accompanied or preceded its execution; that the intentions of the parties must be deduced from the entire agreement; that representations made prior to or contemporaneous with the execution of a written contract are not admissible to vary its terms; that in case of allegation of fraud and failure of evidence to show fraud on part of plaintiff the defense fails and demurrer to the evidence should be sustained; and one who pleads fraud as a defense to a written contract must assume the burden of proof of fraud. He discusses all five of these propositions together, urging that defendant admitted the execution of the contract, that its terms are clear, that defendant did not pay for same when due, and that he attempts to avoid the contract in a manner expressly precluded by the contract. He further urges that there is no evidence to show fraud on the part of plaintiff, that his proof merely showed conversations with the salesman of plaintiff which were superseded by the written contract.

■■ . Ordinarily parol evidence cannot be introduced to vary the terms of a written contract, but when it is alleged that false and fraudulent representations were made to induce the defendant to enter into the contract and that the contract would not have been entered into except for such false and fraudulent representations parol evidence may be introduced to show the fraud and to vitiate the contract. Defendant properly plead fraud and the admission of evidence to prove the fraud was proper. Advertiser's Exchange, Inc., v. Morelock, 192 Okl. 7, 133 P.2d 204; McLean v. Southwestern Casualty Ins. Co., 61 Okl. 79, 159 P. 660; American Asbestos Products Co. v. Smith Bros., 181 Okl. 350, 73 P.2d 839.

■ The case last cited is almost identical with the case here. In that case the salesman agreed to supervise the application of the roofing material and by such representation induced the defendant to buy the roofing material. The syllabus is as follows:

"When a party alleges that he was induced by material, false, and fraudu-

lent representations to enter into a contract which he would not have entered into but for such false and fraudulent representations, the purpose and effect of evidence introduced in support of such allegation is not to contradict or vary the terms of the written contract, but to show that the party was imposed upon and that fraud was practiced in obtaining his signature thereto. Fraud vitiates everything it touches and a contract obtained thereby is voidable and evidence is admissible to show that contracts have been fraudulently obtained."

Defendant's evidence was sufficient to sustain the allegations of fraud in his answer and cross petition.

There inheres in the jury's verdict a finding that the salesman was the duly authorized agent of plaintiff and that plaintiff was bound by the representations made by the salesman to induce defendant to enter into the contract. A company unwilling to be bound by the representations of its salesman must surrender the benefits obtained under them. McLean v. Southwestern Casualty Ins. Co., supra.

Affirmed.