**ELY WALKER DRY GOODS CO. v. SMITH et al.**

No. 7083--Opinion Filed Oct. 24, 1916.

Rehearing Denied Nov. 14, 1916.

Second Petition for Rehearing Denied April 16, 1918.

(160 Pac. 898.)

**1. Principal and Agent—Creation of Relation—Employment of Notary.**

The mere employment of a notary public solely to take an acknowledgment does not constitute such notary the agent of the person paying him to make the representations concerning the nature of the mortgage.

**2. Same—Authority of Agent—Employment of Subagents.**

The fourth paragraph of the syllabus in Gaar, Scott & Co. v. Rogers, 47 Okla. 44, 148 Pac. 161, is adopted and approved.

**3. Mortgages—Validity—Fraud.**

A person signing an instrument is presumed to know its contents, and one in possession of his faculties and able to read and understand, and having an opportunity to read a contract which he signs, if he neglects and fails to do so, cannot escape its liability, for the reason that at the time false representations were made as to its contents. Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 Pac. 577.

**4. Fraud—Degree of Proof.**

Fraud, though in equity it may be inferred from circumstances, must be shown and brought home to the opposite party by clear and convincing proof.

**5. Judgment—Conclusiveness—Matters Concluded.**

A regular judgment while it remains in force is conclusive not only as to matters litigated, but as to every ground of recovery or defense which might have been presented and determined therein.

**6. Judgment—Equitable Relief—Grounds—Fraud.**

Ordinarily it is fraud which prevents a party from fairly exhibiting his case in court or fraud practiced upon the court, or its process, and not fraud in the cause of action, which will authorize a court to set aside a final judgment.

(Syllabus by Galbraith, C.)

Error from District Court, McIntosh County; Preslie B. Cole, Judge.

Action by C. S. Smith and wife against the Ely Walker Dry Goods Company to modify a judgment and for an injunction. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

A. C. Markley, for plaintiff in error.

Brook & Brook, for defendants in error.

Opinion by GALBRAITH, C. This action was brought by C. S. and Louisa B. Smith to modify a judgment rendered against them in favor of the Ely Walker Dry Goods Company in an action to foreclose a mortgage and to enjoin the sale of certain lands described in said judgment of foreclosure. As grounds therefor the petition alleges that plaintiffs executed a certain mortgage to the dry goods company; that it was executed without reading it, and by reason of the representation of one J. T. Primrose, who, in the language of the amended petition, was "then acting for and in behalf of the defendant, Ely Walker Dry Goods Company," that the tract of land on which stood their home, and also a tract known as the "wagon yard," in Eufaula, were not included in the mortgage; that thereafter suit was brought to foreclose the mortgage so given, which suit they did not investigate or defend, for the reason that they could not pay the debt, and had no knowledge that the home or wagon yard was included in the mortgage; that after judgment they discovered that the home and wagon yard were included, and thereupon brought this suit to modify the judgment so as to exclude the home and wagon yard from its operation and to enjoin the threatened sale of said tracts.

Defendant answered, after a demurrer was overruled, denying under oath that Primrose was the agent of the dry goods company, or that any fraud was perpetrated by it. At the trial there was the usual conflict of testimony, but the following facts may, we think, be taken as undisputed: A son of the plaintiffs was indebted to the Ely Walker Dry Goods Company, and was being pressed for payment. As security for the debt and in consideration of the extension of time of payment thereof he offered to have executed a real estate mortgage by his father and mother. The son and A. C. Markley, an attorney at law, who represented the dry goods company, went to J. T. Primrose, a notary public and loan agent, to get a proper description of the land to be mortgaged; it appearing that Primrose had previously closed a loan upon the same land. Either the son or Markley asked Primrose for the description, which was taken from certain records and written by Markley in the mortgage. Primrose was then engaged to go to the Smith home and take the acknowledgment. Markley, Primrose and the son then went together to the Smith home, and were met by plaintiff C. S. Smith. Mrs. Smith was in an adjoining room, and did not leave it. The mortgage was handed to C. S. Smith, and Markley

asked him if he should go in and read or explain it to Mrs. Smith. He was answered in the negative. Thereupon Primrose and C. S. Smith went into Mrs. Smith's room. While in there one of them asked Primrose if the home was included, and he answered that it was not. Primrose then advised the Smiths not to sign the mortgage at all, but they did so, and he took the acknowledgment. Primrose and C. S. Smith then returned to the room where Markley was waiting and delivered the mortgage to him; nothing being said about the conversation had in Mrs. Smith's room. Markley paid Primrose $1 for his services as notary and for walking out to the Smith home to take the acknowledgment. Neither of the Smiths read the mortgage, although C. S. Smith testified he "might have looked over it." The Smiths were mixed blood Creek Indians, each being able to read and speak English fluently, and having better than a common school education. Upon the note secured by the mortgage becoming due suit was brought and personal service had on the Smiths. They did not appear in the action, owing, as they said, to their lack of knowledge that the home and wagon yard were actually included in the mortgage. After judgment was rendered plaintiff discovered that said tracts were so included, and brought the instant suit.

The trial court rendered judgment modifying the judgment in the foreclosure suit · so as to exclude the home and wagon yard and enjoined the sale thereof. From this judgment, the dry goods company appealed to this court.

Several assignments of error are urged. The cause being equitable in its nature, and it being assigned, among other errors, that the petition does not state a cause of action, and that the trial court erred in rendering judgment for the plaintiffs, we prefer to review the whole case. It may be said in the outset that, in our judgment, Primrose was no more the agent of the dry goods company than he was of the Smiths in so far as any authority to represent the terms of the instrument or bind his principal is concerned. He was employed solely to take the acknowledgment; and not to enter into any negotiations on behalf of the dry goods company. His own conduct in advising the Smiths not to execute the mortgage at all negatives the idea that he was acting solely for the dry goods company. Further, it is not shown that Markley had any authority to employ a subagent to perform the duties authorized by his principal for him to perform, or that any such employment was ratified by the principal. In Gaar, Scott & Co.

v. Rogers, 47 Okla. 44, 148 Pac. 161, this court said:

"The general rule of law is that an agent has no implied authority to delegate his powers to a clerk or subagent; and persons employed by him as clerk or subagent do not become the agent of the principal, without the principal's consent; and only upon extreme and unusual exigencies can an agent delegate his authority to a clerk or subagent to transact business for his principal, which requires special judgment, discretion, and experience, without the consent of the principal."

The fact that Markley paid the notary fees does not change the situation. There is no evidence that he asked Primrose to solicit the execution of the mortgage; in fact, Primrose did just the opposite. The only suggestion in the record that Primrose might explain the mortgage came from the Smiths in response to Markley's suggestion that he (Markley) go to Mrs. Smith's room and read or explain it. Primrose's "positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true" (Rev. Laws 1910, § 903), might bring his statement within the definition of fraud were the other necessary elements thereof present. The fraud which will avoid a contract under our statute (Rev. Laws 1910, § 903) must be "committed by a party to a contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract." As fraud is the only ground of relief pleaded in this action, it is the only one considered herein. Under the statute fraud must be brought home, not to a third person, but to a party to the contract. We are not here concerned with any liability of the notary for failure to exercise his duties as such or for misrepresentation, and are not to be taken as passing upon any such question. So far as the parties here are concerned, the notary, in the exercise of his quasi public functions, doubtless owed each of them the duty to see that the grantors understood the nature and contents of the mortgage (1 Cyc. 553), but when he misrepresented without the connivance of either party, we think it can no more be charged to the one than the other of the parties to the contract.

Passing to the next phase of the case, it seems the Smiths did not read the mortgage, although having opportunity and ability so to do.

In Guthrie & Western R. Co. v. Rhodes, 19 Okla. 21, 91 Pac. 1119, 21 L. R. A. (N. S.) 490, this court said:

,"We take it the rule is well established that, in the absence of any evidence of incapacity to read, or any trick or artifice resorted to prevent his reading it, a party signing a written instrument that is plain and unequivocal in its terms is bound by its express terms and conditions therein contained, and that he cannot set up his own carelessness and his own indolence as a defense, and, because he failed to make use of the faculties possessed by him for determining its conditions, to be heard to say that its terms or conditions should be other or different from what they are."

The court in that case and in others hereinafter cited and approved the language of Chancellor Kent in volume 2 of his Commentaries, p. 485:

"The common law affords to every one a reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly or an indifference to the ordinary and accessible means of information."

In McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 Pac. 524, 138 Am. St. Rep. 803, this court, speaking through the Chief Justice, said:

"If a party is induced to sign a contract by fraud he can, of course, avoid it for that reason. It is, however, clear that merely falsely representing to a man in possession of his faculties and able to read that a writing embodies their verbal understanding is not the fraud the law means."

This language is repeated almost verbatim by the court in the late cases. Ames v. Milam, 53 Okla. 739, 157 Pac. 941, and Frizzell v. Milam, 53 Okla. 774, 157 Pac. 944.

In Herron v. Rumley Co., 29 Okla. 319, 116 Pac. 952, this court said:

"That the burden was upon the plaintiff to prove fraud in the security of the execution of said mortgage by positive and convincing evidence. As a rule, fraud is not presumed, and a person signing an instrument is presumed to know its contents, unless the contrary appears by clear, positive, and convincing evidence, and the party signing the instrument cannot escape its legal liability if such party has an opportunity to read the instrument and neglects and fails to do so, and this is so even if false representations may have been made to them as to the character and kind of instrument signed."

Again, in Colonial Jewelry Co. v. Bridges, 43 Okla. 813, 144 Pac. 577, this court said:

"A person signing an instrument is presumed to know its contents, and one in possession of his faculties * * * and having an opportunity to read a contract which he signs, if he neglects and fails to do so, cannot escape its legal liability, for the reason that at the time false representations were made to the effect that the writing contained the verbal understanding of the parties."

These expressions of principle seem to conclude the question of plaintiff's recovery against him. It must be conceded that there are expressions to be found in opinions of this court seeming to limit the broad application of the rules laid down in the case above quoted, but, in our judgment, a careful examination of such cases reveals no exception, if there may be said to be any, within which this instant case falls. Thus in Smith v. Thesmann, 20 Okla. 133, 93 Pac. 977, 15 Ann. Cas. 1161, it was said:

"In the absence of misrepresentation, fraud, or deceit, a party to a transaction is bound by the writing evidencing the agreement, though he was in fact ignorant of its contents; but, where the signature to the agreement is induced by the misrepresentations of the other party as to its contents, and the signer was ignorant thereof, he may introduce parol evidence of contemporaneous acts, declarations, and conversations to show the true nature of the agreement."

An examination of that case reveals, however, that defendant, Thesmann, was a German, unacquainted with the English language, and therefore no more capable of reading the instrument which he signed, written in English, that if he could not read at all.

In Brown v. Trent, 36 Okla. 239, 128 Pac. 895, it was said:

"Where a person signs an instrument without reading it, the law will not permit him to introduce evidence that he did not know what it contained. * * * But when the opposite party has been guilty of some positive fraud, has said or done something capable of proof which has prevented the maker from informing himself, the instrument can be set aside for the fraud."

In that case the plaintiff was a woman, who pleaded that she was so unacquainted with business affairs that she could not comprehend the nature of the transaction into which she entered; that by trust in some near relatives she was induced to sign an instrument represented to be a release of a dower right, but which was, in fact, a deed conveying title in fee simple. The circumstances were held to be such as to "prevent her from informing herself" as to what she signed. No such facts here appear. It is not shown that either party was incapable of appreciating the nature of the instrument signed or that either was unfamiliar with the boundaries and descriptions of the land

they wished to mortgage. Phillips v. Union Ins. Co., 50 Okla. 135, 150 Pac. 1083, is inapplicable here. In that case an insurance agent was to insert a certain provision in an application for insurance. He was intrusted by the insured with making out the application, and delivered to the insured a portion thereof which contained the provision, but did not insert it in the part sent to the company. There is nothing in the case to show that the insured saw or ever had an opportunity to see the application sent the company: hence the decision in his favor in this court does not bear upon this case.

McDonald v. McKinney Nursery Co., 44 Okla. 62, 143 Pac. 191, comes nearer than any case in this court to supporting the position of defendant in error. That case was one of an alleged mistake, decided upon demurrer to the answer and based upon many facts not present here. It may be said to be in any wise in conflict with the general rule announced by the court, the peculiar facts which justified the decisions do not here exist, nor can that case be taken as overruling the prior decisions, especially in view of the later cases of Colonial Jewelry Co. v. Bridges, Ames v. Milam, and Frizzell v. Milam, supra.

It is to be further noted that, though personally summoned, the Smiths made no appearance in the foreclosure action. There is no evidence that any representation was made or action taken to prevent them appearing. Their only excuse is that they did not yet know the mortgage described the home and wagon yard. Ordinarily -it is fraud which prevents a party from having a fair opportunity to present his case, and not fraud in the cause of action itself, which will afford ground for setting aside a judgment. Brown v. Trent, supra; United States v. Throckmorten, 98 U. S. 61, 25 L. Ed. 93; Alder v. Van Kirk. Land & Construction Co., 114 Ala. 551, 21 South. 490, 62 Am. St. Rep. 133; Graham v. Loh, 32 Ind. App. 183, 69 N. E. 474; Gardiner v. Van Alsyne, 22 App. Div. 579, 48 N. Y. Supp. 114; Id., 163 N. Y. 573, 57 N. E. 1110; Ramseur v. Brownell (Ark.) 12 S. W. 200; Irvine v. Leyh, 124 Mo. 361. 27 S. W. 512; Shufeldt v. Gandy, 34 Neb. 32, 51 N. W. 302; Brownell v. Storm Lake Bank, 63 Iowa, 754, 19 N. W. 788. The fraud here alleged, if sufficient to sustain the instant case, was a defense to the foreclosure action. The judgment in that action concluded not only what was actually litigated, but what might properly have been there put in issue. Alfrey v. Colbert, 44 Okla. 246, 144 Pac. 179; Earl v. Earl, 48 Okla. 442, 149 Pac. 1179; Prince v. Gosnell, 47 Okla. 570, 149 Pac. 1162, and cases cited. Although we are not prepared to say that defendant's reason for not defending the suit was altogether insufficient, yet, to say the least, it is but a slender reed upon which to lean. Fraud even in equity, though it may be inferred, must yet be brought home by clear and convincing proof. Upon the whole record and for the reasons above given we are of the opinion that the plaintiff was not entitled to judgment. We are led to overcome our hesitation in differing from the trial court, and to believe that his entire judgment may be wrong, from the fact that he not only restored to plaintiff their home place, which there was some evidence that Primrose represented was not in the deed, but also excepted from the judgment of foreclosure the wagon yard in Eufaula, as to which we have been able to find in the record no evidence at all of any misrepresentation.

The judgment of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.