## POWELL v. SECURITY NATIONAL BANK.

No. 18442. Opinion Filed Dec. 3, 1929.

Rehearing Denied Jan. 28, 1930.

Commissioners' Opinion, Division No. 2.

J. M. Springer, Louis W. Pratt, and W. N. Banks, for plaintiff in error.

Chas. L. Yancey, Henry L. Fist, and Whit Y. Mauzy, for defendant in error.

JEFFREY, C. The Security National Bank of Tulsa, herein called plaintiff, began this suit against C. F. Powell for judgment on a promissory note in the sum of $19,000. The note was dated July 15, 1925, payable to the Security National Bank 90 days after date and signed by Powell. Powell filed an answer in which he admitted the execution of the note, but pleaded substantially the following state of facts: That on or about May 19, 1923, he, for the purpose of securing funds with which to buy an oil and gas lease, secured a loan from the Liberty National Bank of Tulsa, hereinafter referred to as L. Bank, in the sum of $25,000, and gave his note therefor; that A. E. Lewis, who was president of the L. Bank, agreed to negotiate the deal for the lease; that Powell transferred the net amount of the loan to his account in a New York bank and executed two checks on that bank in favor of the L. Bank, one being for $20,000 and one for $4,495, and left them with Lewis to be used in purchasing said lease. It is alleged that the difference between the two checks and the amount of the loan was the discount to be charged for the loan; and that Powell only received credit at the L. Bank for the sum of $24,495. The answer further alleges that within a day or two after the execution of the note and the two checks, Powell again returned to the L. Bank and inquired of A. E. Lewis if he had secured the oil and gas lease, and that Lewis informed him, in substance, that the lease could not be purchased. Thereupon Powell requested Lewis to apply the two checks in payment of the note and destroy it. Powell alleged that the note which had been made payable to the L. Bank was made payable 90 days after date; that he believed and understood that the same had been paid and destroyed, but that on November 5, 1923, the plaintiff purchased of the L. Bank, by written contract, all the property and assets of the L. Bank, including the note of date May 19, 1923, for the sum of $25,000. It is then alleged that plaintiff called upon Powell for payment of the note; that he refused to pay same, explaining that the note had been fully paid; but that the officers and agents of plaintiff bank informed Powell that he was, under such

circumstances, guilty of a conspiracy with the said A. E. Lewis to wreck a national bank in violation of the national banking laws and subject to prosecution and sentence to the federal penitentiary, but that if Powell would execute a new note to plaintiff, the bank would protect him against criminal prosecution. It is further alleged that thereafter the president of plaintiff bank also told Powell that if he would execute a new note, that bank would throw him enough business in his profession as an appraisal engineer and tax expert to pay said note without disturbing his capital. It is then alleged that Powell believed the threats and promises made to him, and was induced thereby to execute a new note to the Security National Bank for the sum of $25,000. The answer further alleges that from time to time Powell paid the interest on the note and renewed it several times. It is also alleged that plaintiff gave Powell employment as an appraisal engineer and tax expert to the amount of $810, which was credited on the note, and that Powell made other payments on the principal and interest so as to reduce the amount thereof to $19,000; and that the note in suit is a renewal note of the original transaction so had. It is further alleged that plaintiff breached its agreement to furnish or secure enough tax work for Powell whereby the note could be paid from this source. It is then alleged that the officers and agents of plaintiff bank falsely and fraudulently made the threats and promises which induced Powell to execute the note to plaintiff for the purpose of securing said note, and that there was no consideration for the giving of any of said notes except the first note to the L. Bank, which had been fully paid. All of the material allegations in Powell's answer were denied in the reply.

When the cause came on for trial plaintiff introduced its note and rested. Defendant undertook to show the origin of the transaction, and undertook to testify to a conversation had between defendant and A. E. Lewis showing the purpose for which the first note was given; that checks were left with Lewis with instructions to apply the same in payment of the note. This was objected to, and the objection was sustained. Thereafter, counsel for defendant attempted to prove, and properly offered to prove all of the material allegations of his answer tending to show that the original note to the L. Bank had been paid, that no consideration was given by plaintiff for the first or any subsequent renewal note, or if there

ever had been a consideration, that it had failed; that the officers of plaintiff bank had represented to Powell that if he would execute the note the bank would furnish or secure him sufficient business in his profession with which to pay the note so that he would not have to use any assets then possessed by him; that said officials had promised to accept renewal notes from time to time until Powell could secure enough tax work, through the influence of the bank and its officers, with which to pay said note, and the further fact that the plaintiff bank failed and refused to carry out this agreement. To all of the foregoing offers the court sustained objections, and thereafter, upon request of plaintiff, directed the jury to return a verdict in favor of plaintiff. Defendant here complains of the ruling of the trial court in excluding his evidence offered to prove no consideration for the note and fraud in the procurement of the note.

The first proposition presented is that the proffered evidence was material and proper, under the answer, to show a want of consideration for the note, and the trial court erred in excluding it. Plaintiff did not take the original note from the L. Bank as a holder in due course, and the rights of such a holder nowhere enter into our discussion of the questions under consideration. We may first observe that the real consideration or total lack of consideration for a bill or note may be shown as a defense to such instrument where such defense is admissible. Sections 7698, C. O. S. 1921. And this may be done by evidence of a parol, contemporaneous agreement. This defense is always admissible as between the original parties to the paper, and all others who do not stand in the position of a holder in due course. 8 C. J. 1024. Such defenses include payment as well as failure of consideration.

If Powell's offered testimony is true, the original note to the L. Bank was paid, and it was without consideration in the hands of plaintiff. If it had been paid, plaintiff could not have enforced it against Powell. As we understand the evidence offered, certain officials of plaintiff bank first threatened to prosecute Powell unless he executed a renewal note, but that this did not bring about the desired results. Thereupon, the president of the bank proposed that if Powell would execute the renewal note, the bank would, through the influence of its officers, secure sufficient work for Powell as an appraisal engineer and tax expert with which to pay the note, so that the note would not

have to be paid except out of funds so derived. Powell also offered to prove that the president of the bank promised that if he would execute the note, the bank would take renewal notes from time to time until full payment could be made from fees derived from tax work secured Powell by the bank. This, according to Powell's story, was sufficient and did induce him to execute the note. If there was no consideration for the original note, in the hands of plaintiff bank, the mere release of that note would not be sufficient consideration for the renewal note. It has been held that under certain circumstances the execution of a renewal note will operate as a waiver of a defense to the old note of partial failure of consideration. However, that question is not here. According to Powell's offered testimony there was something that induced him to execute the renewal note other than the release of the original note. That inducement was either an offer to forbear criminal prosecution, after a suggestion of the fact, or the promise that the note could be paid out of tax work to be furnished him by plaintiff bank, or both. Public policy entirely eliminates the first element as a moving consideration, and the only remaining promise or action which may be considered a valid consideration, that we are able to discover, is the promise that the note could be paid in the manner heretofore mentioned. Powell pleaded and offered to testify that he believed and relied on this promise until after he had executed the renewal note upon which this suit is based. He offered to testify that a friend and business associate of the officials of the bank had employment for a tax expert which would pay sufficient fees to discharge his note to the bank; that he requested the president of the bank to use his influence in securing the work; but that this request was refused; and that he was then informed by the president of the bank that the bank would not use its influence to secure work for Powell. As we view it, under Powell's theory of the case, this would have established a total lack of consideration. Such testimony may not have found favor with the jury, but it was for the jury to pass upon and not the court.

The case of Mackin v. Darrow Music Co., 69 Okla. 1, 169 Pac. 497, presents a very similar state of facts. There the defense was that upon the execution of the note sued upon, a parol, contemporaneous agreement was had, whereby it was agreed that defendant could pay the same out of hauling, to be furnished by plaintiff. It was there held that evidence of such an agreement was ad-

missible as a defense. To the same effect are Weeks v. Medler, 20 Kan. 57, and Johnston v. McCart, 24 Wash. 19, 63 Pac. 1121. The evidence was admissible for the purposes offered, and the court erred in excluding it.

Counsel for defendant in error cite numerous authorities to the effect that where one has knowledge of fraud in the procurement of the note, or of a partial failure in the consideration thereof, and executes a renewal note with such knowledge, he will be held to have waived either as a defense. But, as heretofore stated, the question of waiver does not enter into the case, since Powell offered to testify that he did not know that plaintiff would not perform its promise or did not intend to perform when the note in suit or any other renewal note was given.

It is also contended that a part of the rejected evidence was admissible for the purpose of showing that the first renewal note made to plaintiff was procured by fraud. The evidence relied on for this purpose is that A. L. Farmer, who was president of plaintiff bank, at the time the first renewal note was made, promised that if Powell would execute the note, the bank would, by its influence, turn him sufficient tax work with which to pay the note; and that in August, 1925, Mr. Berry, who was at that time president of the bank, refused to use his influence to secure work for Powell, and stated that the bank would not do so. A promise made mala fide and without any intention at the time of making it to perform it has been held to constitute actionable fraud. McLean v. S. W. Casualty Ins. Co., 61 Okla. 79, 159 Pac. 660, and numerous cases therein cited. Such a promise has been said to constitute a misstatement of an existing fact, the existing fact being the state of mind of the promisor. A distinction is made between the mere nonperformance of a promise and a promise made when the promisor at the time intends not to perform it. The mere nonperformance of a promise not made with intentions not to perform does not constitute actionable fraud. As we understand the offered testimony, there is no fact or circumstance inconsistent with an honest intention to perform the promise at the time it was made. According to the evidence offered, there had been a change of presidents of the bank, and the mere fact that the new president refused to perform the promise made by the former is no evidence that the promise was fraudulently made. It is equally as well settled that in actions at law, fraud cannot be inferred as a fact from other facts which may be consistent with an honest purpose. When

a transaction is fairly susceptible of two constructions, the one which will free it from the imputation of fraud will be adopted. Davis v. Howe, 99 Okla. 118, 226 Pac. 316; Ely Walker Dry Goods Co. v. Smith et al., 69 Okla. 261, 160 Pac. 898; Dunn v. Claunch et al., 13 Okla. 577, 76 Pac. 143; Henderson v. Gilliland et al., 187 Ala. 268, 65 So. 793. Although Powell attempted to prove that he did not discover plaintiff's intention not to perform the promise until after the note in suit was given we conclude that the offered testimony would not have raised an issue on the question of fraud, and it was not error to exclude it on that question alone.

The question of duress in the procurement of the note has been abandoned, and will not be given consideration here. The judgment of the trial court is reversed, and the cause remanded, with directions to grant a new trial.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 3 R. C. L. p. 943; R. C. L. Perm. Supp. p. 929. (3) anno. 10 L. R. A. (N. S.) 642; 24 L. R. A. (N. S.) 736; 51 A. L. R. 63; 12 R. C. L. p. 261; R. C. L. Perm. Supp. p. 3105. See "Bills and Notes," 8 C. J. §1339, p. 1024, n. 74. "Evidence," 22 C. J. §1669, p. 1255, n. 52. "Fraud," 26 C. J. §25, p. 1087, n. 43; §26, p. 1094, n. 99.