## WRIGHT et al. v. MEDLAR et ux.

No. 24757.   Oct. 8, 1935.

Rehearing Denied Dec. 3, 1935.

Second Petition for Rehearing Denied
April 21, 1936.

John W. Porter, Charles P. Gotwals, John T. Gibson, Wm. A. Killey, and James D. Gibson, for plaintiffs in error.

Bower Broaddus and Julian B. Fite, for defendants in error.

PER CURIAM. The parties will be referred to as they appeared in the trial court. This action was commenced in the district court of Muskogee county by Forry F. Medlar and Elizabeth D. Medlar against LeRoy A. Wright and Marie F. Wright to recover certain sums of money paid upon the purchase price of certain shares of the capital stock of the Muskogee Paint & Glass Company, a corporation.

Plaintiffs, in their petition, allege that prior and up to the time of the transaction complained of, the plaintiff Forry F. Medlar was employed as a salesman of wholesale stocks of paints, varnishes, and other goods ordinarily used by paint and glass companies; that he had saved and accumulated approximately $3,800 and his wife, Elizabeth D. Medlar, had saved and accumulated approximately $400; that defendants, knowing plaintiffs had such money, formed a scheme and intent to obtain said money from plaintiffs; that defendants owned all of the capital stock of the Muskogee Paint & Glass Company, and they urged plaintiff Forry F. Medlar to give up his employment as a salesman, and by fraudulent representations induced plaintiffs to purchase 49 per cent. of the capital stock of said Muskogee Paint & Glass Company, plaintiffs paying part cash and the balance of $10,500 by a demand note, signed by both plaintiffs, payable to defendant Marie F. Wright, and secured by a pledge of the shares of said capital stock so purchased; that defendants made to plaintiffs the following fraudulent representations, to wit: (1) That the sole indebtedness of said Muskogee Paint & Glass Company was approximately $3,000; (2) that said corporation had a large earning capacity and was capable of paying large dividends, and had always in the past paid large dividends; (3) that the earnings of said corporation could soon pay for any capital stock therein which plaintiffs might purchase; (4) defendants urged the plaintiff Forry F. Medlar to leave the position he then held and represented and agreed that they would see that said Forry F. Medlar received employment from said Muskogee Paint & Glass Company, for as long as he was the owner of said capital stock; and (5) that said stock, after the initial payment, could be paid for and would be paid for out of the earnings of said corporation; that plaintiffs relied upon said representations and purchased said shares of capital stock as aforesaid; that plaintiff Forry F. Medlar left the position he then held and entered into a parol contract with defendants, by which he was employed by said corporation for such a length of time as he might own stock in said corporation; that he went to work for said corporation at a salary of $300 per month; that he drew such salary for approximately eight months and his salary was then reduced to $250 per month, which salary he drew for approximately four and one-half months, and his salary was then reduced to $150 per month, which he drew for a period of two months, and he was then discharged from such employment. Plaintiffs further pleaded that each and all of said representations were untrue and known by defendants to be untrue at the time they were made, and that defendants had no intention at the time they employed said Forry F. Medlar of carrying out said contract of employment. Plaintiffs further pleaded that the inducing cause of said purchase of said stock was the continued employment of Forry F. Medlar by said corporation, and that was the

chief consideration for said purchase; that said defendants breached said contract by discharging said Forry F. Medlar and by reason thereof plaintiffs were damaged in the sum of $4,162.25, being the amount, with interest, paid upon the purchase price of said stock.

The cause was tried to a jury and resulted in a verdict and judgment in favor of the plaintiffs for the amount sued for.

Defendants, among other complaints, insist plaintiffs' petition is not clear as to the remedy sought, but that it sounds in damages, and, therefore, the court erred in his instructions as to the measure of recovery. Plaintiffs have severely criticized defendants' contentions and insist the petition is one of pure rescission. In other words, that plaintiffs had a right to and did rescind the contract for the purchase of said stock on account of said alleged fraud, and that they now seek to recover the sums paid by them in pursuance of said contract. We think perhaps the petition is entitled to some criticism, but for the purpose of this opinion we shall adopt the plaintiffs' theory and treat it as one of rescission on account of the alleged fraud.

The rules of law governing this action are well established, and, therefore, we shall not extend this opinion by quoting from or citing many authorities.

According to plaintiffs' own allegations, the principal inducing cause of their entering into the contract for purchase of stock was the alleged agreement to employ Forry F. Medlar, so long as he should own said stock. From a very careful examination of the evidence, we are of the opinion it wholly fails to show that Forry F. Medlar was to be employed, or was employed, for such time as he should own stock in the corporation, or any other definite, fixed or determinable period. The strongest evidence in that regard is the testimony of Mr. Medlar himself (R. 52), in which he was asked the following questions and made the following answers:

"Q. Were you to have any employment with the company? A. That was my only idea in putting my money in and going in was to have permanent employment. Q. Did you have an agreement with Mr. Wright with reference to your employment? A. Yes, sir. Q. What was that? A. They wanted to be sure I liked this town and that I would be satisfied to settle down and be in business here; that I knew it was a life business and not something temporary."

In our judgment that evidence falls far short of supporting the allegations of the petition in that regard. In reaching this conclusion we are mindful of the correction of the record showing some slight changes in the above-quoted testimony, but the difference is not sufficient to change our opinion. The above-quoted testimony in reality expresses what the witness had in mind and his conclusions, but does not show the parties made any definite agreement or promise with reference to his employment. Even if there were sufficient evidence to support the allegations of employment as alleged, there is no evidence whatsoever that the alleged contract of employment was fraudulently made, that is, that defendants made such contract with the intent at the time of not performing such contract. Fraud is never presumed, but must be established by clear, satisfactory and convincing evidence. Dunn v. Claunch et al., 13 Okla. 577, 76 P. 143; Ely Walker Dry Goods Co. v. Smith et al., 69 Okla. 261, 160 P. 898, and Tucker et al. v. Traylor Engineering & Manufacturing Co., 48 F. (2d) 783.

The breach of a contract is not of itself evidence of fraud in the making of such contract. In Rogers et al. v. Harris, 76 Okla. 215, 184 P. 459, this court said:

"In an action for fraud predicated on a promise to be performed in the future, the gist of the fraud is, not the breach of the promise, but the fraudulent intent of the promisor at the time of making the promise, not to perform the same, and the intent to deceive the promisee by such false promise. To render nonperformance fraudulent, the intention not to perform must exist when the promise is made, and, if the promise is made in good faith when the contract is entered into, there is no fraud, although the promisor subsequently changes his mind and fails or refuses to perform."

There is no evidence even tending to support the various other allegations of fraud. There is no evidence as to the indebtedness of the corporation at the time the contract for purchase of the stock was made, much less that such indebtedness was in excess of $3,000. There is no evidence that defendants represented that said corporation had always in the past paid large dividends, and even if such representation had been made plaintiffs could not have been misled thereby. The testimony of the plaintiff Forry F. Medlar shows that he knew from an examination of the books and records of the corporation before the deal was consummated that the corporation had paid no dividends at all for at least two years prior thereto. Any expression of opinion as to what the corporation might earn in the

future would be an opinion only and could not constitute actionable fraud. Rock v. Fisher, 115 Okla. 53, 241 P. 496. Likewise, any expression of opinion that the future earnings of the corporation would soon pay for any stock purchased falls by the same rule. Not only is there no evidence to support the allegations of fraud, but the testimony of Forry F. Medlar himself shows that negotiations looking to the purchase of the stock opened in April, 1930; that he did not make the first payment until May 31, 1930, at which time he paid $1,200 as a binder on the deal. He paid no more until July 5, 1930, at which time he paid $2,-300. He had then been in the employment of the corporation since June 15th. He next paid $300 on October 1, 1930. He had then been in the employment of the corporation for three and one-half months. He and his wife did not execute the note for the balance of the purchase price until July 1, 1930, and he had then been in the employment of the corporation for two weeks. Furthermore, his testimony shows that from the very beginning of negotiations in April, 1930, he had full and free access to the books and records of the corporation, and that he inspected them. There is not a syllable of evidence that defendants ever, before the deal was closed, concealed any information as to the condition and affairs of the corporation, but, upon the other hand, they attempted to make any and all such information available to the plaintiffs. This record abundantly shows that plaintiffs were disappointed in that the corporation did not prosper as they had hoped, but it wholly fails to show any fraud on the part of defendants.

Complaint is made that defendants finally acquired not only the money paid by plaintiffs, but likewise the stock which plaintiffs purchased, but there is no proof to show they acquired the stock other than in accordance with the written pledge signed by plaintiffs, and even if there was such proof it would not support this action.

At the close of plaintiffs' evidence in chief, defendants demurred to the same, which demurrer was overruled and exceptions allowed defendants, and that action of the court is assigned as error. We are of the opinion the demurrer to the evidence should have been sustained, and there was no evidence at the close of the entire case to warrant the court in submitting the case to the jury.

Therefore, this cause should be and is reversed and remanded to the trial court, with directions that the demurrer of the defendants to plaintiffs' evidence be sustained and judgment rendered against the plaintiffs and in favor of the defendants.

The Supreme Court acknowledges the aid of Attorneys Frank G. Anderson, B. A. Ames, and Leo Considine in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Anderson and approved by Mr. Ames and Mr. Considine, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, PHELPS, and CORN, JJ., concur.