## DOWNTOWN CHEVROLET CO. et al. v. NICCUM et al.

No. 27119.   June 29, 1937.

Rehearing Denied Oct. 5, 1937.

Pierce, McClelland, Kneeland & Bailey, for plaintiff in error General Motors Acceptance Corporation.

Mills & Cohen, for plaintiff in error Downtown Chevrolet Company.

E. M. Connor, for defendants in error.

BAYLESS, V. C. J.   C. F. Niccum and

William Boulware sued Downtown Chevrolet Company and General Motors Acceptance Company, corporations, in the court of common pleas of Tulsa county, Okla., and obtained judgment, from which the companies appeal.

The petition alleged the ownership of a certain Chevrolet truck by plaintiffs on the 28th day of March, 1935, subject to a conditional sales contract given by them to Downtown Company and by it assigned to G. M. A. C. That on said date an employee of the companies told plaintiffs the companies had heard that one Neeley was intending to take possession of the truck under a claim of lien for services, and the companies believed it to the best interests of themselves and plaintiffs for the companies to take the truck and hold it at the place of business of Downtown Company to see what action Neeley would undertake, and that the companies would permit plaintiffs to pay off the indebtedness in the meantime. That plaintiffs relied upon these statements and permitted the truck to be taken to Downtown Company's parking lot. That plaintiffs went to Downtown Company's place of business the next day, after first having gone to G. M. A. C. and being by it referred thereto, and there found Downtown Company had converted the truck on behalf of both companies, and attached conditions to the return of it to the plaintiffs. That the act of conversion was joint. That the truck was of the value of $1,000 for which they asked general damages of $1,000 and punitive damages of $500.

The defendants answered separately. G. M. A. C. pleaded the sale of the truck by Downtown Company to one Rueb, the taking by the vendor from the vendee a conditional sales contract evidencing and securing the balance due; the assignment thereof to it, and breaches thereof by the failure to pay the monthly installments, whereby it became entitled to repossess said truck, and did so. It then denied that its agent made the statements or agreement set out by plaintiffs and denied he had authority to do so. It alleges a failure of consideration for said agreement and specifically denied plaintiffs owned the truck. Plaintiffs replied to this answer by alleging that G. M. A. C. knew plaintiffs had bought the truck from Rueb and consented thereto. They further alleged that Downtown Company was an endorser with recourse of the conditional sales contract and plaintiffs were informed and believed the endorser had discharged its obligation to G. M. A. C. and thereby G. M. A. C. no longer has any claim to the property or interest in its disposition. They reasserted the authority of G. M. A. C.'s agent to make the agreement with plaintiffs and alleged a consideration therefor.

Downtown Company's answer was in the nature of a general denial.

We have given some space to the pleadings because of the turn the case took at the trial, and the contentions on appeal.

We will now summarize the evidence, indicating where it is in conflict and where not. Rueb owned and operated a freight trucking business which we shall refer to as A. He purchased the truck involved from Downtown Company and gave the conditional sales contract to evidence and secure the unpaid balance. Downtown Company assigned this instrument, with recourse, to G. M. A. C. Some time later Rueb, whose business affairs were becoming involved, sold this truck to plaintiffs, who paid partly by cash and by assuming the unpaid balance due G. M. A. C. Rueb and plaintiffs recognized their obligation to notify G. M. A. C. of this sale and to procure its approval thereof. Plaintiffs executed papers designed to effect this, and left them with Rueb for further action. These papers seem to have reached G. M. A. C., but information and formalities demanded by it were never completed. From this it is clear that G. M. A. C. knew of the sale, but had not approved it. When the sale was made by Rueb to plaintiffs January 14, 1935, plaintiffs left the truck with Rueb under an arrangement whereby he was to use the truck in his business and credit it with 70 per cent. of its earnings, and from these was to pay the truck's operating expense, including the driver's wages, and was to pay the monthly installments to G. M. A. C. and the balance to plaintiffs. About the 20th of March, 1935, plaintiffs learned that no payments had been made to G. M. A. C., that the drivers' wages were unpaid, and the tires on the truck were worn out. G. M. A. C. canceled the insurance on the truck and applied the premium rebate to the payment of the January, 1935, installment, leaving February and March, 1935, installments unpaid. About March 20, 1935, plaintiffs learned that Rueb had left his business, as well as the other conditions above out-

lined, and Niccum, acting for plaintiffs, met a representative of G. M. A. C. at the offices of business A. At this point the witnesses disagree. Plaintiffs proved that after discussing the circumstances with G. M. A. C.'s representative, this man stated to them he believed it for the best interests of all that G. M. A. C. take the truck into possession to be held for a week or so, during which time plaintiffs could make arrangements. That relying upon this statement that the truck would be held, they turned it to G. M. A. C. G. M. A. C. proved that after its representative had discussed the conditions of the truck and the debt, Niccum told him plaintiffs were sick and tired of the whole matter, and for G. M. A. C. to repossess the truck under the terms of the contract, and its agent did so. In other words, plaintiffs say they were induced to surrender possession, whereas G. M. A. C. says they willingly surrendered it to be rid of the bad loan. In any event, G. M. A. C. took the truck to the storage lot of Downtown Company and left it. This was Wednesday night. Friday plaintiffs came to Tulsa to see G. M. A. C. about the truck. First they went to the lot where the truck was to be kept, and found Downtown Company in possession of it and installing extensive and expensive repairs. Without disclosing their identities or purpose, they inquired of a salesman about the purchase of the truck, and were informed that said truck was a repossessed one and not ready for sale. Plaintiffs then went to the office of G. M. A. C., and there they were informed that G. M. A. C. had turned the truck over to Downtown Company and plaintiffs would have to deal with that company. Plaintiffs then went to Downtown Company's offices and there engaged the president of that company, Mr. Fuller, in conversation regarding the truck. At this point plaintiffs learned that Fuller had taken over Rueb's business A and had organized company B to continue such business in an effort to salvage from A something for its creditors, of whom Downtown Company was one. When Downtown Company received the truck from G. M. A. C. it treated the same as repossessed and turned back to it under its liability as endorser or guarantor to G. M. A. C., and Fuller was having extensive repairs made in preparation of selling the truck to B to continue in its business. Fuller at first claimed the truck outright under this theory, but eventually told plaintiffs they might take the truck

if they would make satisfactory arrangements with officials of B, pay up the delinquent payments to G. M. A. C. and pay Downtown Company $150 for the repairs. Plaintiffs testified they came to Tulsa prepared to redeem the truck and had the money with which to do it. The parties differ slightly in their versions of this conversation.

From the foregoing we believe certain things are undisputed: (1) G. M. A. C. had a lien on the truck in question, and Downtown Company was a guarantor to it of the payment of the money represented by the lien; (2) G. M. A. C. knew Rueb had sold to plaintiffs; (3) plaintiffs were obligated to make the monthly payments; (4) plaintiffs did not make such payments; and (5) on March 20, 1935, G. M. A. C. was lawfully entitled to possession of the truck. Since the jury found for plaintiffs, we must accept their finding to the effect that G. M. A. C. obtained possession by virtue of the promises made by its representative, rather than by virtue of its contractual rights.

The jury returned a verdict of $250 actual and $250 punitive damages.

The question confronting us is whether the conduct of G. M. A. C., under all of the circumstances, amounts to fraud, and was of a character to entitle plaintiffs to punitive damages.

The trial court took the view that plaintiffs' cause of action was based upon fraud, and so instructed the jury and directed the jury that it might find for the plaintiffs if the jury found and believed the promises were falsely and fraudulently made.

The verdict and judgment on this theory cannot be sustained. The law is well settled that fraud is never presumed, but must be proved by clear and convincing proof. Wright v. Medlar, 176 Okla. 555, 56 P. (2d) 395, and cases cited therein.

The only proof in this record upon which we can predicate an intent not to keep the promises made is the fact that such promises were not kept. The breach of the contract is not proof of the fraud in the making thereof. Wright v. Medlar, supra; Rogers v. Harris, 76 Okla. 215, 184 P. 459, and Beatrice Creamery Co. v. Goldman, 175 Okla. 300, 52 P. (2d) 1033. This rule is closely related to the one to be discussed in the succeeding paragraph.

It is said in 26 C. J. 1087, sec. 25, et seq.:

"An actionable representation must relate to past or existing facts and cannot consist of mere broken promises, unfulfilled predictions, or erroneous conjectures as to future events."

See the text of 12 R. C. L. 252, et seq., secs. 19 and 21-29, and the cases cited in R. C. L. Perm. Supp. vol. 4, pp. 3104-05, under sections 21-29. This rule has been announced in this state in several cases, among which are Rogers v. Harris, supra, Beatrice Creamery Co. v. Goldman, supra, and the cases cited in 26 C. J. 1088, under continuation of note 43.

The plaintiffs asserted, and the jury believed them, that G. M. A. C. promised to hold the truck. This related to the future, it was a statement regarding future action, as differentiated from a false statement concerning a past or present fact. The plaintiffs have not attempted to show that G. M. A. C.'s agent had any other thought in mind, or had any present intention of breaching the agreement, when he made it to induce plaintiffs to deliver him the truck.

The facts in this case do not bring it within the rule a promise to do something in the future, accompanied by an intent not to do so, as announced in Blackburn v. Morrison, 29 Okla. 510, 118 P. 402, Ann. Cas. 1913A, 523; McLean v. S. W. Cas. Ins. Co., 61 Okla. 79, 159 P. 660; Haggerty v. Key, 100 Okla. 238, 229 P. 548; and Powell v. Security National Bank, 141 Okla. 169, 284 P. 5.

We express no opinion on whether the course of conduct between G. M. A. C., Downtown Company, Fuller, and Fuller's Company B constituted conversion, unaffected by the question of fraud.

Judgment reversed.

OSBORN, C. J., and BUSBY, CORN, and GIBSON, JJ., concur.